# Chicago & Alton Railroad Co.

## *v.*

## George W. Quaintance.

1. RAILROADS—*duty to guard against communicating fire to adjacent property.* Railway companies are invested by their charters with the right to use locomotive engines as a propelling power, in the exercise of the franchises conferred, upon the implied understanding, only, that the law will compel such corporations to use every possible precaution, by the use of all the best and most approved mechanical inventions for that purpose, to prevent injuries by fire and other causes to the property of the citizens on the lines of their respective roads.

2. The fact that the use of such engines in populous districts through which they pass, is known to be dangerous in their most careful use, itself imposes a high degree of responsibility upon the companies using them as a motive power, and in the absence of such a degree of care and diligence on the part of railway companies, they will be held to the strictest accountability for injuries to property in the vicinity of their roads.

3. Experience having demonstrated that railway companies, by the use of certain mechanical contrivances, can prevent the emission of fire sparks from locomotive engines, in such quantities, at least, as not to be at all dangerous to property in the immediate vicinity, they must, in every instance, be held to a strict performance of their duties in that regard.

4. If, however, such companies use all proper and reasonable precaution to prevent the escape of fire from their engines by the application of the best and most approved mechanical appliances for that purpose, and keep the same constantly in good repair while in use, and carefully and skillfully managed by competent and prudent engineers, and nevertheless fire results, they will not be liable for the damage thereby occasioned.

5. SAME—*burden of proof.* In an action against a railroad company for injury, resulting by fire communicated from the defendant's engine on the line of its road, the act of March 29, 1869, having made the establishment of the fact that an injury has been occasioned from fire sparks emitted from its engine while passing along the road, itself full *prima facie* evidence of negligence on the part of the company, and of its agents and servants in charge at the time, if the plaintiff establishes, in the first instance, the fact that the fire, which occasioned the injury complained of was thus communicated, such proof will entitle him to a recovery, and places the burden of proof to rebut the *prima facie* case thus made, upon the company, to show by affirmative evidence that the engine, at the time, was equipped with the necessary and most effective appliances to prevent the escape of fire, and

that the engine was in good repair, and was properly, carefully and skill-fully handled by a competent engineer.

6. SAME—*degree of diligence required.* It is not enough for the company, to rebut the *prima facie* case thus made by the plaintiff, to show that the engine was originally constructed with the best and most approved inventions to prevent the escape of fire. The law imposes upon the company and its employees the duty of keeping a constant and vigilant watch to see that its engines are kept in proper repair so as not to be dangerous to property in the vicinity of the road.

7. SAME—*negligence—what constitutes.* It would seem to be negligence on the part of a railway engineer to use wood in a coal-burning engine, while running it over the road, for the reason that the meshes in the wire netting, used to prevent the escape of fire sparks, are made much larger when coal only is used for fuel, and the fire sparks from wood are much more dangerous because they retain the fire for a much greater length of time. To use wood, then, in such an engine in a dry time, with a high wind prevailing, would be great carelessness and recklessness.

8. SAME—*admissibility and weight of evidence.* In an action against a railroad company to recover for loss to the plaintiff, occasioned by fire, alleged to have been communicated to the plaintiff's house from one of the company's engines, the defendant offered to prove by the master mechanic employed in its shops, at a point beyond where the fire occurred, which was the destination of the engine, the general custom of inspecting engines on their arrival at that place, for the purpose of showing that in accordance with that custom, had the engine been defective, the person whose duty it was to inspect all engines on their arrival, would have reported to the witness that such was its condition, and, there being no such report, that the engine was in good repair: *Held,* the evidence, although regarded as of no high grade, and not very satisfactory in its character, was admissible as tending to show the condition of the engine from which the fire was communicated, that being a material fact in issue. It was for the jury to say what weight should be given to such testimony.

APPEAL from the Circuit Court of Menard county; the Hon. CHARLES TURNER, Judge, presiding.

This was an action on the case, brought by Quaintance against the railroad company, to recover damages for the burning of his house, the fire alleged to have been communicated from an engine of defendant, on its road between the cities of Bloomington and Jacksonville. A trial by jury resulted in a verdict for the plaintiff, upon which the court rendered judgment. The defendant appeals.

Upon the trial, the defendant offered to prove by John A. Jackman, the master mechanic of the company, in charge of its shops at Bloomington, and to which place the engine was running, what was the usage and routine as to the management of the engines when they arrived at Bloomington, it being the custom of the person whose duty it was to inspect all engines on their arrival at that place, to report their condition to the witness, for the purpose of showing, as no such report was made of any defect in the engine on its arrival at the shops on the day of the fire, that the engine, at the time, was in good repair. The exclusion of this evidence by the court, the defendant assigns as error. The other questions arising on the record are fully presented in the opinion of the court.

Mr. A. W. CHURCH, for the appellant.

Messrs. LACEY & WALLACE, and Mr. T. W. McNEELEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The sovereignty of the State, by the act of granting charters, has invested railway companies with the right to use locomotive engines as a propelling power in the exercise of the franchises conferred, upon the implied understanding, only, that the law will compel such corporations to use every possible precaution, by the use of all the best and most approved mechanical inventions for that purpose, to prevent injuries by fire and other causes, to the property of the citizens on the lines of their respective roads. *Illinois Central Railroad Co.* v. *Mills,* 42 Ill. 408 ; *Illinois Central Railroad Co.* v. *Shanefelt,* 47 Ill. 497.

The necessity for the grant of such a privilege was found to exist in the exigencies of commerce, and the right thus conferred to use this kind of motive power, however dangerous it may be in its natural tendencies, is as lawful in the parties using it, as is the use of any other known propelling power.

The maxim of the law, *sic utere tuo, ut alienum non laedas*, may have as just an application to corporations created by legislative authority, as to private persons in the use and control of their property.

When the legislature conferred this right on railway companies to use locomotive engines, it is supposed they had in view their dangerous character, that if recklessly used, would spread destruction through all our towns and cities, and into every farming community through which they passed, and they certainly did not intend to confer this extraordinary privilege upon any other condition than that the parties using such engines should be held to the highest degree of care and diligence to prevent injury to the property of the citizen. The use of such engines in populous districts through which they pass, is known to be dangerous in their most careful use, and this fact itself imposes a high degree of responsibility upon the companies using them as a motive power. In the absence of such a degree of care and diligence on the part of railway companies, the courts in this country and in England have always held them to the strictest accountability for injuries to property in the vicinity of their roads.

Experience has demonstrated, that railway companies, by the use of certain mechanical inventions and contrivances, can prevent the emission of fire sparks from locomotive engines, in such quantities, at least, as would not be at all dangerous to property in the immediate proximity. They must, therefore, in every instance, be held to a strict performance of their duties in that regard, otherwise there would be no safety for the property of the citizen on the lines of these great thoroughfares which traverse the country in every direction, and on which their engines run night and day. If, however, such companies use all proper and reasonable precaution to prevent the escape of fire from their engines, by the application of the best and most approved mechanical appliances for that purpose, and keep the same constantly in good repair while in use, and carefully and skillfully managed by competent and

prudent engineers, the law is, that they will not be responsible for injuries that may occur from fire ; and in the event that a loss does occur under such circumstances, it will be *damnum absque injuria.*

The effect of the statute of 1869, (Gross' Comp. 554, § 103,) is, if the fact be established that an injury has been occasioned from fire sparks emitted from the engine while passing along the road, to make that fact, itself, full *prima facie* evidence of negligence on the part of the company, and of its agents and servants in charge at the time. If the party injured establishes, in the first instance, the fact that the fire, which occasioned the injury complained of, was communicated from the engine, such proof would entitle the party to a recovery, and the burden of proof to rebut the *prima facie* case thus made, is on the company, to show by affirmative evidence that the engine at the time was equipped with the necessary and most effective appliances to prevent the escape of fire, and that the engine was in good repair, and was properly, carefully and skillfully handled by a competent engineer.

The first inquiry, then, that presents itself in the consideration of the case, is, whether the fire that caused the destruction of the property of the appellee, was communicated from the engine of the appellant on its track. Of this fact there can be no serious question in this court. The evidence was sufficient to authorize the jury to find that the fire was so occasioned, and the jury having found that issue for the appellee, we can not say, in view of the evidence, that it does not sustain their finding, or that the verdict is even against the weight of the evidence.

The proof shows, that the house stood north of the track, distant about 150 feet. At the time the fire occurred, everything was very dry, and a strong wind prevailed from the south to the north, which would carry the sparks that escaped from the engine in the direction of the house of the appellee. The fire was not discovered until the lapse of about half an hour after the passage of the train, which, it is alleged, occasioned

the injury.   It was first seen on the roof, on the south side, facing the track, and when first discovered, it was a very small fire.   The fire originated on the roof of the main part of the house, and some of the witnesses who went to assist the family, testified there was no fire in any of the stoves in that part of the house.   In fact, there was no fire in any of the stoves about the house, except the one in the kitchen, and that was in the L that projected north, and it is hardly possible, or probable, that sparks of fire from that chimney could have gone south over the main building, against a strong wind prevailing from that direction, and there set the roof on fire. The evidence of men of experience tends to show, that fire sparks could not be carried the distance the house was situated from the track, and retain sufficient life to ignite anything upon which they might happen to fall.   But no possible theory that can be maintained by the evidence, has been, or can be suggested, for the origin of the fire, unless it was occasioned by fire sparks emitted from the engine.   We must, therefore, believe with the jury, that the fire which escaped from the engine was the cause of the destruction of appellee's property, notwithstanding the fact that witnesses of large and intelligent experience do testify they never heard of a fire being communicated at so great a distance by fire sparks emitted from a coal-burning engine.   We can only say, this is a new instance occurring outside of their former experience.

But the principal question is, whether the engine, in this instance, was properly equipped with the best and most approved known inventions to prevent the escape of fire sparks, and whether it was in good repair at the time, and whether it was carefully and skillfully managed by a competent engineer.

The appellants, evidently, directed the principal part of their evidence to establish these facts, for the reason that under the recent statute, the burden of proving such facts rested upon the company.   There seems to be but little conflict in the evidence, that the engine which passed with the train just before

the accident occurred, was a coal-burning engine. It may also be assumed, that the evidence establishes the further fact that the company had but two coal-burning engines running regularly on their road at that date, between Bloomington and Jacksonville, and they were numbered respectively "48" and "86." It is in proof, that No. 48 was used exclusively to passenger trains, and No. 86 to freight. It was certainly not engine 48 that communicated the fire, for the train that passed immediately before the fire occurred, was a freight train; all the witnesses concur in that statement.

The appellants insist that it was engine No. 86 that drew the train at the time in question, and the principal part of their evidence was intended to establish the fact that that engine was properly equipped with the best known and most effective inventions and contrivances to prevent the escape of fire sparks, and that it was in a good state of repair. There is very grave doubt created by the evidence, whether engine No. 86 was the one in use at the time the accident occurred. All the appellant's witnesses testify, that engine No. 86 was used at that date to the regular freight train. The hour by the time card for the regular freight train to pass the house of appellee, was between eleven and twelve o'clock in the forenoon; the train that should have passed just before the fire occurred, did not pass until about two o'clock in the afternoon. A number of witnesses near the premises of the appellee, and some of the hands engaged in repairing the track immediately in front of the house, all distinctly stated that two freight trains passed on that day going north—one between eleven and twelve o'clock in the forenoon, and the other between two and three o'clock in the afternoon, the last one about half an hour before the fire occurred.

It does not seem to be denied, that the time at that point for the regular freight train to pass, to which engine No. 86 was attached, was between eleven and twelve o'clock in the forenoon, and unless the appellee's witnesses were all mistaken, such a train did pass at that hour going north. It is difficult

to reconcile this evidence with the fact that it was engine No. 86 that occasioned the injuries alleged. The evidence tends most strongly to show, that it was an engine attached to an extra train. The master mechanics at Bloomington and Jacksonville both testify, that to the best of their knowledge no extra train went over the road on the 22d day of April, 1869, the day the fire occurred. The testimony of McHenry, who had charge of a gang of hands repairing the track at that point, and the other witnesses near the premises, is in conflict with theirs, and tends most strongly to show they were mistaken in their recollection. We think the testimony of the witness McHenry is entitled to great credit, and from the facts and circumstances which he detailed to assist his recollection, ought to outweigh the mere recollection of the witnesses Jackman and Swan. He was present at the fire, and that fact would assist to fix the events of that day on his memory. He testifies most distinctly, that two freight trains passed over the road on that day, going north—one just before noon, and another in the afternoon, about half an hour before the fire occurred. In these statements he is fully corroborated by the other witnesses who were in the immediate vicinity of the premises, and whose attention was called to the facts, and is not contradicted by any witness who testifies to any fact within his actual knowledge. The witness McHenry also testifies to an affirmative fact that must have strengthened his recollection, and must have made it almost impossible for him to be mistaken in regard to the facts to which he testified. He was engaged in repairing the track of appellant's road, only a short distance from appellee's house, and it was his business to look out for all trains, regular and extra, and he states that the station agent notified him an extra would be along that afternoon, and he remembers distinctly a train did pass that afternoon, running north.

It is apparent, then, that if the train that passed the premises of the appellee, just before the fire occurred, was not drawn by

engine No. 86, there is no evidence whatever, in this record, that shows that the engine from which the fire escaped, which, it is alleged, occasioned the injury, was properly equipped with the necessary appliances to prevent the escape of fire, or that it was in good repair, and there is, therefore, nothing to rebut the *prima facie* case made by the appellee, when he established the fact that his property was destroyed by fire, occasioned by fire sparks emitted from appellant's engine. If the jury took this view of the evidence, we do not see how we can do otherwise than to sustain them in their verdict. We can not say the verdict is not warranted by the evidence.

But, if it be conceded that engine No. 86 was the one that drew the freight train at the time in question, we do not see how that fact would materially aid the case of appellants.. The evidence of the witness Jackman, does show that engine No. 86 was furnished with the best and most approved appliances and inventions to prevent the escape of fire, but whether the engine was in good repair on that particular day, he does not positively know, and does not state. It is conceded by the witness Jackman, who is doubtless a skillful and learned man in his profession, that if the engine, at the time in question, did throw fire sparks to the distance of 150 feet, of sufficient size and of life enough to ignite the house, it must necessarily have been out of repair.

There is a significant fact in this record, and it is not without its moral force, at least. The witness Wheeland, whose business it was to examine every engine that came into the yards at Bloomington, and report the same to Jackman, states, that if engine No. 86 came in on the 22d day of April, he must have examined it; but he does not state its condition, nor does he state the condition of all the engines that came in on that day.

It is doubtless true, as the witnesses state, that engine No. 86 was furnished with the best and most approved appliances to prevent the escape of fire, but for anything these witnesses state, it might have been very much out of repair on that day.

The law imposes upon the company and its employees, the duty of keeping a constant and vigilant watch to see that their engines are kept in proper repair, so as not to be dangerous to property in the vicinity of the road. The safety of the property of the citizen requires it, and the law will hold the company to a strict accountability in that regard. *Illinois Central Railroad Co.* v. *Mills,* 42 Ill. 407.

But it is not enough for the company to show, that the engine was originally constructed with the best and most approved inventions to prevent the escape of fire, but if loss occurs, to rebut the *prima facie* case made, by proof of the fact that the injury was occasioned by fire escaping from the engine, they must show the engine was, at the time, in good order, and that it was properly and skillfully handled by a competent and skillful engineer. This is not shown by the evidence in this case. The testimony of the engineer, in charge at the time of the accident, was all-important to rebut the *prima facie* case made by the appellee ; he is not produced as a witness, and no reason is shown for his absence.

The evidence shows, that the grade in front of the premises of appellee, is very steep and difficult of ascent. It requires much more steam than is ordinarily used to get the train over the grade at that point. The more steam that is used, the greater will be the exhaust, and consequently a greater volume of sparks will be thrown out, and with very much greater force. What care the engineer used, if any, does not appear. He may have been reckless in the management of the engine, and thus caused it to throw out an increased and very unusual volume of fire. Such appears, from the evidence, to have been the case.

The proof is, that it would be great carelessness on the part of the engineer to use wood in a coal-burning engine, for the reason that the meshes in the wire netting are made much larger where coal only is used for fuel. The fire sparks from wood are much more dangerous, because they retain the fire for a much greater length of time. What kind of fuel the

engineer used in this instance, does not affirmatively appear. It may be, for anything that appears in this evidence, that, for the purpose of suddenly creating an increase of steam for immediate use, wood was used for fuel; and if so, it would be great carelessness and recklessness, with a high wind prevailing, as it was on that day. The name of the engineer was known to the company, and doubtless his residence, yet he is not produced to explain the manner in which the engine was managed, or any other facts necessary to rebut the *prima facie* case made by the appellee.

The appellants offered to prove by the witness Jackman, the general custom of inspecting engines as they came into the shops at Bloomington, which evidence, at the time, was excluded by the court. The court, doubtless, ruled erroneously on that question. While it is no high grade of evidence, and not very satisfactory in its character, such evidence would tend to show the condition of the engine, which was a material fact in issue, and it would be the province of the jury to say what weight should be given to such evidence. The error, however, was cured at a subsequent period of the trial, for the witness, on re-examination, was permitted to testify to the facts sought to be proved by him in chief.

The evidence sufficiently sustains the finding of the jury, and the judgment of the circuit court must be affirmed.

*Judgment affirmed.*