Sycamore Preserve Works, Appellee, v. Chicago and North Western Railway Company, Appellant.

Gen. No. 8,961.

Opinion filed February 10, 1936. Rehearing denied and opinion modified April 7, 1936. Certificate of Importance and Appeal granted April 7, 1936.

LOWELL B. SMITH, of Sycamore, and NELSON J. WILCOX and NELSON TROTTMAN, both of Chicago, for appellant.

ZANE, MORSE, ZIMMERMAN & NORMAN, of Chicago, and LATHAM CASTLE, of Sycamore, for appellee; EDWARD A. ZIMMERMAN and WILLIAM R. ENGELHARDT, of Chicago, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

The plaintiff, the Sycamore Preserve Works filed suit in the circuit court of De Kalb county against the Chicago and North Western Railroad Company. The declaration consists of five counts, which are as follows:

### FIRST COUNT.

"For that whereas on the 30th day of November, 1932, the said plaintiff was and thence hitherto has been and now is a corporation duly incorporated under

the laws of the State of Illinois and the said defendant on said day and theretofore and thereafter was and now is a railroad corporation owning, operating and controlling a certain line of railway and the right-of-way therefor situated in the County aforesaid and extending from the main line of said railway northward to the City of Sycamore and passing adjacent thereto a certain warehouse situated at the said City of Sycamore, and whereas there was then in said warehouse a certain stock of canned goods and other property owned by the said plaintiff.

"For that whereas the said defendant, in violation of its duty under the Statute in force from July 1, 1874 in the State of Illinois entitled 'An Act in Relation of Fencing and Operating Railroads,' did not then and there keep its said right-of-way clear from dead grass, dry weeds and other dangerous combustible material, and whereas there was situated upon said right-of-way a certain switch stand about 250 feet south of said warehouse, a fire being upon said right-of-way near said switch stand ran and spread by reason of said dead grass, dry weeds and other dangerous, combustible material on said right-of-way towards and to said warehouse and set said warehouse on fire, and said warehouse was consumed, and the plaintiff's said stock of goods and other property therein was wholly destroyed, all without any negligence of plaintiff, to the damage of the plaintiff in the sum of Eighty Thousand Dollars ($80,000) and reasonable attorneys' fees in this behalf, and therefore plaintiff brings suit, etc."

The first paragraphs of the 2nd, 3rd, 4th and 5th counts of the declaration are practically the same as the first count and are omitted.

## Second Count.

"For that whereas the said defendant, in violation of its duty, under the Statute in force from July 1, 1874 in the State of Illinois entitled 'An Act in Rela-

tion to Fencing and Operating Railroads,' through negligence of its employees did not keep its said right-of-way clear from dead grass, dry weeds and other dangerous, combustible material, but such dead grass, dry weeds and other dangerous, combustible material were by the negligence of defendant permitted to be and remain upon said right-of-way, near a certain switch stand maintained upon said right-of-way, a short distance from said warehouse, and whereas, without any negligence of plaintiff, a fire had originated upon said right-of-way near said switch stand, said fire was caused by said dead grass, dry weeds and other dangerous, combustible material then and there upon said right-of-way to run and spread beyond said right-of-way, in consequence whereof said fire was communicated to said warehouse and set said warehouse on fire, and the stock of canned goods and other property of plaintiff therein was destroyed, to the damage of plaintiff, etc.''

### Third Count.

''That the said defendant, in violation of its duty under Secs. 1½ and 1 of the Statute of Illinois entitled 'An Act in Relation to Fencing and Operating Railroads,' in force July 1, 1874, as amended, did not then and there keep its said right-of-way clear from dead grass, dry weeds or other dangerous, combustible material.

''That by reason of defendant's neglect to keep its said right-of-way clear as aforesaid, and without any negligence on plaintiff's part, a fire originated upon its said right-of-way near a certain switch stand then and there situated upon said right-of-way at a distance of about, to-wit: 250 feet from said warehouse containing said canned goods and other property and said fire was spread and communicated by reason of the defendant's neglect to keep its said right-of-way clear as aforesaid, to the said warehouse. That said

warehouse and the plaintiff's stock of canned goods and other property therein were consumed and destroyed by said fire, to the damage of the plaintiff, etc.''

### Fourth Count.

''That the said defendant, in violation of its duty under Secs. 1½ and 1 of the Statute of Illinois entitled 'An Act in Relation to Fencing and Operating Railroads,' in force July 1, 1874, as amended, did not then and there keep its said right-of-way clear from dead grass, dry weeds or other dangerous, combustible material.

''That by reason of defendant's neglect to keep its said right-of-way clear as aforesaid, and without any negligence on the plaintiff's part, a fire which occurred and was then and there burning in the dead grass and dry weeds or other combustible material upon its said right-of-way near a certain switch stand then and there situated upon said right-of-way at a distance of about, to-wit: 250 feet from said warehouse containing said canned goods and other property was spread and communicated to the said warehouse. That said warehouse and the plaintiff's stock of canned goods and other property therein were consumed and destroyed by said fire, to the damage of the plaintiff, etc.''

### Fifth Count.

''For that whereas the said defendant then and there maintained upon its said right-of-way a certain switch stand and lamp therein a short distance to the south of said warehouse and it was necessary for the employees of defendant to take out said lamp from said stand at certain intervals and to clean, oil and relight said lamp and replace the same in said switch stand, and whereas the said defendant, in violation of its duty under the Illinois Statute in force from July 1, 1874, entitled 'An Act in Relation to Fencing and

Operating Railroads,' had then and there permitted to be and remain upon its said right-of-way around said switch stand and between the same and said warehouse, dead grass, dry weeds and other dangerous, combustible material, the employees of said defendant then and there engaged in clearing, relighting and replacing said switch stand lamp, negligently set fire to dead grass, dry weeds and other dangerous combustible material then and there upon said right-of-way and said fire, by reason of said dead grass, dry weeds and other dangerous, combustible material, ran and spread off said right-of-way and upon adjoining land and then and there become communicated to said warehouse, and in consequence thereof, without any negligence of plaintiff, the said warehouse was consumed and the plaintiff's said stock of canned goods and other property therein was destroyed, to the damage of plaintiff, etc.''

The defendant pleaded the general issue. At the conclusion of the case the defendant filed separate written motions in which it challenged each of the first four counts and asked that the same be dismissed because each failed to state a cause of action. These motions were denied. The case was submitted to the jury for trial on all of the counts, who returned a verdict in favor of the plaintiff and assessed its damages at the sum of $72,926. Judgment was entered upon this verdict in favor of the plaintiff.

For the sake of convenience in this opinion the Sycamore Preserve Works will be referred to as the plaintiff and the Chicago and North Western Railroad Company as the defendant.

The evidence discloses that the railroad track of the defendant extended in a northerly and southerly direction through De Kalb County at the place where the fire occurred; that the direction of the tracks are not directly straight north and south but angle slightly to

the northeast and southwest; that the plaintiff was engaged in the canning business; that it had a warehouse for storing its canned goods just immediately east of the right of way of the defendant. At approximately 250 feet south of the warehouse is a switch which is commonly referred to as the Borden switch; that on November 30, 1932, a few minutes before 3 o'clock p. m., the plaintiff's warehouse and contents were destroyed by fire; that the fire started at, or very near, the Borden switch and spread northerly in a fan-like shape along the defendant's right of way until it reached the warehouse of the plaintiff and set the same on fire; that on the day in question there was a strong wind blowing from the south which carried the flames from a point which is east from the Borden switch in a general northerly direction through dry grass, weeds and other combustible material which the defendant had allowed to accumulate on their right of way. It is our opinion that the evidence establishes the above facts, and we find the same to be true as a matter of fact.

The defendant seriously insists that the trial court erred in submitting the case to the jury as there was no evidence to sustain the fifth count of the declaration and the first four counts did not state a cause of action.

We will first consider whether the evidence sustains the charge in the fifth count. It will be observed that the plaintiff charges that the defendant maintained a certain switch stand and lamp a short distance south of the warehouse and that the employees of the defendant would take out the said lamp at certain intervals, clean, fill and relight the lamp and replace it in the switch stand; that the said employees, on the day in question, a few minutes before the fire started which consumed the plaintiff's warehouse, had taken the said light out, cleaned it, refilled it with oil and

relighted it and put it back in the switch stand and in so doing they negligently set fire to dead grass, dry weeds, and other dangerous combustible material upon the right of way of the defendant, which it had negligently allowed to accumulate and by the negligence of the employees in lighting the lamp and the negligence of the company by allowing this combustible material to accumulate on the right of way, the grass was set on fire and communicated to the warehouse and destroyed the plaintiff's property. There is no question but that the defendant was guilty of violating the statute, by allowing combustible material to remain on their right of way. The fire did start on the right of way and the wind fanned it to the north and the plaintiff's warehouse and contents burned, which is conclusive proof that the material along the side of the right of way was combustible.

The evidence is somewhat conflicting as to the exact time that the employees of the defendant filled and relighted this lamp, but it was only a short time before the fire was discovered. The fire was discovered by the railroad men before they knew that the plaintiff's building was on fire. They attempted to put it out but were unsuccessful. The fire started in the afternoon, but nobody saw it until it was close to the plaintiff's warehouse. As before stated we are of the opinion that the evidence conclusively shows that this fire started at, or near the place where the defendant's employees cleaned and lighted the switch lamp, but, from the whole of the evidence on this point this court cannot say that the evidence preponderates in favor of the plaintiff that the fire was caused by the negligence of the employees of the defendant in filling, or adjusting this lamp. The only circumstance which points to the conclusion that it did so originate is the evidence that the fire started at a point very close to where the men were working at the time they were

filling and lighting the lamp. But in our opinion this is not sufficient for the plaintiff to maintain its suit on the fifth count of the declaration.

It is the contention of the plaintiff that the defendant violated sections 1 and 1½ of the Railroad Warehouse Act, Ill. State Bar Stats. 1935, ch. 114, ¶¶ 78, 79, which are sections Nos. 78 and 79 of chapter 114 of Hurd's Revised Statute. The two sections are as follows:

"¶ 78. Fencing track—Cattle-guards—Damages—Attorney's fees. Section 1. That every railroad corporation shall, within six months after any part of its line is open for use, erect and thereafter maintain fences on both sides of its road or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks, with gates or bars at the farm crossings of such railroad, which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the lands adjoining such railroad; and shall also construct, where the same has not already been done, and thereafter maintain at all road crossings now existing or hereafter established, cattle-guards, suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad; and when such fences or cattle-guards are not made as aforesaid, or when such fences or cattle-guards are not kept in good repair, such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation, to such cattle, horses, sheep, hogs or other stock thereon, and reasonable attorney's fees, in any court wherein suit is brought

for such damages, or to which the same may be appealed; but where such fences and guards have been duly made and kept in good repair, such railroad corporation shall not be liable for any such damages, unless negligently or wilfully done.

" ¶ 79. Right-of-way clear of combustibles. § 1½. It shall be the duty of all railroad corporations to keep their right of way clear from all dead grass, dry weeds, or other dangerous combustible material, and for neglect shall be liable to the penalties named in section 1."

The plaintiff insists that the fire starting in the grass and weeds, which were combustible material on the right of way of the defendant, and then burning in a northerly direction until it was communicated to the warehouse of the plaintiff, is sufficient to show that the fire was caused by the negligence of the defendant and they can maintain their suit. The defendants do not deny that they are guilty of negligence in allowing dead grass, dry weeds and other dangerous combustible material to accumulate on their right of way and that the fire of some unknown origin got into the grass and caused the warehouse of the plaintiff to be burned, but they seriously insist that before they can be held liable, in damages, the plaintiff must go farther than to just show the negligence of the defendant in leaving this combustible material on their right of way, and prove that the fire started through some act of the defendant.

It further insists that sections 1 and 1½ must be read together, since section 1, relating to the fencing and operating of railroads, is limited to damage done by the railroad, its agents, engines or cars. The plaintiff just as seriously insists that the only part of section 1 which should be read in connection with section 1½ is that which provides for penalties of attorney's fees where suit is brought for damages, which occurred by a breach of the statute.

We cannot agree with the defendant that the word "damages" in section 1 of the above act, can be construed to be a penalty. The only penalty mentioned in this section is attorney fees where suit is brought to collect damages caused by the acts of the railroad company. Damages were recoverable for injuries to property at common law. On page 88, volume 2, Chitty's Blackstone (1830) we find this language: "Personal actions are such whereby a man claims a debt, or personal duty, or damages in lieu thereof; and, likewise, whereby a man claims a satisfaction in damages for some injury done to his person or property. The former are said to be founded on contracts, the latter upon torts or wrongs. Now, since all wrong may be considered as merely a privation of right, the plain, natural remedy for every species of wrong is the being put into possession of that right, whereof the party injured is deprived. This may either be effected by a specific delivery or restoration of the subject-matter in dispute to the legal owner; as when lands or personal chattels are unjustly withheld or invaded: or where that is not possible, or at least not an adequate remedy, by making the sufferer a pecuniary satisfaction in damages; as in case of assault, breach of contract, etc."

In the case of *Holmes v. Holmes*, 64 Ill. 294, 297, our Supreme Court quoting from Greenleaf on Evidence say: "Damages are given as a compensation, recompense or satisfaction to the plaintiff, for an injury actually received by him from the defendant. They should be precisely commensurate with the injury, neither more nor less." Webster's International dictionary describes damages as "the estimated reparation in money for detriment or injury sustained." Worcester defines it as payment for or indemnity for injuries. From an examination of these authorities, it must be presumed that the legislature in using the

word "damages" did not refer to or impose a penalty upon the railroad company, but defined specific duties, and a violation of them would entitle a person to damages who had stock killed by the railroad company, but only such damages as they were entitled to under the common law.

The plaintiff insists that the first four counts of its declaration state a cause of action and has cited numerous cases to sustain its contention. In all of the cases where our own courts have discussed this statute, the question of the negligence of the railroad company in starting the fire was involved, and the court's ruling in each case was necessarily not only regarding the negligence of the railroad company in not complying with the statute, but also regarding its negligence in starting the fire on their right of way. None is authority for the purpose of showing that the railroad company would be liable simply because the fire started on their right of way, which they negligently failed to keep free and clear of combustible material as required by the statute.

In the case of *St. Louis, B. & M. Ry. Co. v. Maddox* (Tex. Civ. App.), 152 S. W. 225, the court held a railroad company liable for damages which had negligently allowed combustible grass to remain on its right of way in which a fire was started, by means of a passenger on one of the defendant's trains throwing a lighted cigar stub into the grass and igniting the same.

In *Northern Pac. R. Co. v. Lewis,* 51 Fed. 658, one of the contested questions was whether the locomotives of the defendant had started the fire. The federal statute provided that all railroad companies passing through the territory of Montana should keep their right of way free of dead grass, weeds and other dangerous combustible material and the failure to do so is prima facie evidence of negligence. The court held

that it was a question of proof and for the jury to decide how the fire had started and whether the plaintiff had proven a case.

In the case of *Spokane International Ry. Co. v. United States,* 72 F. (2d) 440, the court uses this language: "We come then to the effect of the Idaho statute which required defendant to keep its right of way 'clear and free from all combustible and inflammable material, matter or substances,' during the closed season from June 1st to September 1st. This criminal statute established a standard of care, failure in the observance of which would subject defendant to civil liability if such failure caused or contributed to the damage of another. If the fire originated on defendant's right of way in inflammable material, which in violation of the statute had been allowed to accumulate there, it would be immaterial whether a spark from defendant's engine or the act of a third person from without defendant's right of way had caused the fire. *Curoe v. Spokane & I. E. R. Co.,* 32 Idaho 643, 186 Pac. 1101, 37 A. L. R. 923 (1920). On the other hand, even though the fire was set by a spark from defendant's engine, if it ignited material lying outside of the right of way, negligence in failing to maintain the right of way in accordance with the statute would be immaterial unless such failure contributed to the spread of the fire."

It will be observed that the federal court cite the case of *Curoe v. Spokane R. Co.,* 32 Idaho 643, 186 Pac. 1101. This case quotes the Idaho statute on which the federal case was based. Two sections of the statute are as follows: "Sec. 2948. Every person, firm or corporation operating a railroad shall keep the ground for 50 feet on each side of the center of the track, or such portion thereof as may be owned or controlled by such person, firm or corporation, clear of combustible materials, except ties and other materials necessary

for the maintenance and operation of the road, from June 1 to October 1 of each year. . . . Any person, firm or corporation violating any provisions of this section shall be guilty of a misdemeanor and shall be subjected to a penalty of not more than $100 for each offense.

"Sec. 8346. . . . Any railway company which shall permit any fire to spread from its right of way to the adjoining lands, is guilty of a misdemeanor."

From the language used by the federal court and from the wording of the Idaho statute, it will be observed that this statute is penal in its nature and anyone violating the same is guilty of a misdemeanor and shall be subject to a fine. The second section provides that the railroad company shall be guilty of a misdemeanor, if it permits any fire to spread from its right of way to adjoining lands regardless of how the fire may have started. We do not consider this case or the federal case authority for the proposition that the railroad company would be liable for a fire which started on their right of way and spread to adjacent property, as the Idaho statute is not the same as ours.

In the case of *Chorman v. Maryland, D. & V. Ry. Co.*, 5 Boyce (28 Del.) 339, 93 Atl. 559, the laws of that State provide as follows: "That if any railroad company owning or operating any railroad within this state shall suffer to remain on any part of the land owned or controlled by it for railroad purposes within this state any brush or other combustible matter, and if such brush or other combustible matter shall from any cause whatsoever be set on fire, and by reason thereof, the property, real or personal, of any person or persons shall be destroyed or impaired, such railroad company shall be liable to pay the damages resulting therefrom," etc. An examination of this statute discloses that it is much more drastic than the Illinois law. This statute provides that if the company

does not keep their right of way free and clear from combustible materials they shall be liable for damage done by fire from any cause whatsoever, regardless of whether the fire is caused by the negligence of the railroad company or by any other cause.

The case of *Richmond v. McNeill,* 31 Ore. 342, 49 Pac. 879, also involved a question of how the fire started, but because of instructions given by the trial court, the reviewing court in discussing the propriety of these instructions uses this language: ''If a railroad company, not using its line of railway, were to permit dry grass or shavings to accumulate on the track and right of way, and such material should be set on fire by any means by another, it would certainly not be contended that the railroad company would be liable for any damages that might result therefrom. So, too, if the railroad track, with inflammable material allowed to accumulate thereon, were in constant use by the company in the operation of its trains, and some evil-disposed person were to apply a lighted match to such material, or if the same were struck by lightning, whereby it became ignited, and injury resulted, the railroad company would not be liable therefor. The use of steam as a motive power renders a fire in the locomotive a necessity, and it is against this agent, when so confined and used, that the company operating the engine must carefully guard; and to render it liable for negligence in this respect it must appear, either directly or by necessary inference, that the fire doing the injury complained of emanated from the receptacle in which the legislative grant permits it to be transported.''

The only case cited by either the plaintiff or the defendant which has not had the element of how the fire started or which is controlled by some particular statute of the State in which the action arose is *Mobile & O. R. Co. v. Mathis,* 188 Ky. 47, 220 S. W. 1068. The

court in its opinion says: ''A more serious question arises with respect to instruction No. 1, which is as follows: 'The court instructs the jury that it was the duty of the defendant, Mobile & Ohio Railroad Company, to keep its right of way clear from weeds, high grass, and decayed timber, which, from their nature and condition, are combustible material, and liable to take and communicate fire from passing trains to abutting or adjacent property; and if you believe from the evidence that the defendant negligently failed to do this, and by reason thereof a fire started on its right of way, and spread to the adjacent or abutting property, and destroyed the property of the plaintiff Mathis, the jury will find for the plaintiffs the damages thereby sustained, and unless the jury so believe they will find for the defendant.'

''Under this instruction the company was liable if it failed to comply with its duty to keep its right of way clear from weeds, high grass, and decayed timber, which, from their nature and condition, are combustible material, and liable to take and communicate fire from passing trains to abutting or adjacent property, 'and by reason thereof a fire started on its right of way, and spread to the adjacent or abutting property, and destroyed the property of the plaintiff Mathis.' In other words, the liability of the defendant was made to depend, not on whether the combustible material was set on fire by a passing train, but on the mere presence of the combustible material, if the fire started on the right of way. The necessary effect of the instruction was to make the company liable if the fire started on its right of way from the presence of combustible material, even though it may have been started by a tramp or some third party.

''In our opinion the statute is not susceptible of such a construction. The prohibition of the statute is not directed against weeds, high grass, and decayed

timber in general, but only against such as 'from their nature and condition are combustible material, liable to take and communicate fire from passing trains to abutting or adjacent property.' The purpose of the statute was to prevent fires by passing trains. An examination of the numerous cases on the subject will show that in every one the court was careful to point out that, if a railroad company permitted combustible material to accumulate on its right of way, it would be liable for the consequences of a fire therefrom, notwithstanding the fact that the engine was equipped with proper spark arresters, if it appeared that the material was set on fire by a passing train. We therefore conclude that the instruction was erroneous, in not requiring the jury to believe that the combustible material was set on fire by a passing train." This court held that it was not enough for the plaintiff to show that the railroad company was negligent in leaving combustible material along its right of way and the same caught fire and damaged their property, but they must go further and show that the fire was started in some manner by the railroad company.

In the case of *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270, the statement of the court in regard to the facts is as follows: "Near the east end of the Free Bridge, which connects St. Louis and East St. Louis, plaintiff in error has several tracks which pass under the bridge. Between ten and eleven o'clock at night on February 11, 1927, defendant in error and her husband were driving east across the bridge when they observed a large volume of dense, black smoke ahead of them. This smoke was coming from one of plaintiff in error's engines. They stopped about thirty feet from the smoke and waited five or ten minutes for it to clear away, when the wind suddenly changed and blew the smoke over them, and about a second later another car came up from the west and

struck their car. Thereafter defendant in error got out of the car and went to the rear of it to see what damage, if any, had been done, and while she was between the two cars a third car came up and struck the second, forcing it forward. She was caught between the cars and was severely injured.'' Mrs. Oswald sued for and recovered damages against the railroad company.

The court in discussing whether the negligence of the railroad company was the proximate cause of the injury uses the following language: ''There are three essential elements in actionable negligence: First, a duty imposed by law to exercise care in favor of the person for whose benefit the duty is imposed; second, the failure to perform that duty; and third, a consequent injury so connected with the failure to perform the duty that the failure is the proximate cause of the injury. What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which might result from his act. If the negligence does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury.''

It is our conclusion that in the present case, the negligence of the railroad company in leaving combustible material on its right of way was not the proximate cause of the injury to the plaintiff, but that the presence of the grass, weeds and combustible material

on the right of way, although negligent, did nothing more than furnish a condition by which the injury to the plaintiff was made possible.

There are other assignments of error, but the conclusions that we have reached make it unnecessary for us to discuss them.

It is our opinion that the first, second, third and fourth counts of plaintiff's declaration do not state a cause of action and the court erred in overruling defendant's motion for a directed verdict as to these counts.

The judgment of the circuit court of De Kalb county is hereby reversed.

*Reversed.*