Armien Eilts, by George R. Eilts, His Next Friend, and George R. Eilts, Appellees, v. Illinois Central Railroad Company, Appellant.

Gen. No. 9,500.

26

October term, 1939. | Heard in this court at the Opinion filed December 15, 1939.

CHARLES A. HELSELL, of Chicago, and BARNES & MAGOON, of Lacon, for appellant; V. W. FOSTER and E. C. CRAIG, both of Chicago, of counsel.

WALLACE J. BLACK and KENNETH W. BLACK, both of Peoria, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

On May 1, 1938, appellee Armien Eilts, and another boy named John Monser, drove from the city of Wenona to the city of Toluca, where they spent the afternoon. It was on Sunday and Armien Eilts was using his father's automobile. On the way back, smoke was encountered upon the highway due to burning grass along the side of the road and upon the right of

way of defendant railroad company. This was shortly before 5 o'clock in the afternoon. The Monser boy, who was riding with appellee, states that he was riding in the front seat, on the right of appellee, with his feet extended outside the car through the open window; and that as they approached the place upon the highway where the smoke was across the road, he removed his feet from the window, closing same, in order to keep the smoke out of the car. While driving along the highway at this place, the car Eilts was operating collided with the rear of a car which was proceeding in the same direction.

The driver of the car brought suit against appellant by his father, as next friend, for personal injuries sustained in the collision, and the father joined therein to recover for damages to his automobile. Appellant prosecutes this appeal from judgments rendered on verdicts in favor of the plaintiffs.

About one and a half miles south of Wenona, U. S. highway 51, and State highway 17, meet. Highway 51, runs north and south and parallels appellant's track on the east. Highway 17, comes from the west and as it approaches highway 51, it branches north and south to form a "Y." This is the place near which the accident happened and is referred to in the record as the "Y." A gravel road comes from the east to intersect highway 51, at the "Y." The accident happened on this gravel road a short distance from its intersection with highway 51. It appears that a fire had spread through the grass and vegetation along the public highways and along appellant's right of way where they meet at this "Y." Appellees maintain that the fire started from sparks emitted from one of appellant's engines. It appears from the testimony of appellees' witness Hess, who is towerman, agent, and telegrapher at the junction of appellant's track with the New York Central track, a few miles south of the "Y," that the only train of appellant that passed the place in question on that day, prior to the origin of the fire, was

a freight train going north, at about 10:30 in the morning.

Appellees have three witnesses who drove past the place in question, ranging from 11 o'clock in the morning to 1:30 o'clock in the afternoon. They saw the fire. Appellant's witness, Carpenter, passed the ''Y'' at about 9 o'clock in the morning. As he drove along the highway he saw a man burning grass and weeds on the side of highway 51, between the railroad track and the hard road. He states the man was Charles Nodine. On his return that afternoon at about 3 o'clock, he saw the fire still burning along this territory and says he drove through smoke on the highway as he passed. Appellant's witness, Cleve Franklin, states that he was section foreman for appellant; that he was driving his car on the day in question; that about 5:30, in the afternoon he arrived home and saw the smoke from this fire; that he went to see what it was, and found fire burning on the right of way of appellant's track and along the sides of the highways at the ''Y.'' He saw appellee's car at the side of the road. Irving Nodine drove by the ''Y'' at about 6 o'clock in the morning on the day in question. His brother, Charles Nodine, was riding with him. Charles left the car at the ''Y.'' He farmed some of the land situated in the territory included within the ''Y.'' Charles Nodine testifies that on this morning he set fire to dead grass and vegetation on the east side of appellant's right of way, north of the intersection at the ''Y''; and that he did not stay to extinguish the fire.

Appellant introduced evidence by the engineer and fireman of the engine that went north over its tracks on the morning in question. The engineer states that he passed the ''Y'' that morning sometime between 9 and 10 o'clock; that his engine was properly equipped with a spark arrester, and that it was in good working order. He described such equipment and states that his engine was not throwing any sparks. The fireman

states that no sparks were being emitted from the smoke stack of the engine that morning; that the spark arrester was in good repair and working properly.

Appellees urge sec. 54, of ch. 114, Ill. Rev. Stat. 1939, [Jones Ill. Stats. Ann. 114.090] relative to appellant keeping its right of way free from dead grass, weeds and other dangerous combustible material, and that by virtue of such provision of statute, appellant is liable for damages resulting from a fire started by sparks emitted from its engines. However, in this connection the burden is on the plaintiff, in such actions, to prove that sparks or cinders from the engine started the fire in question. Although such proof may not be positive in its character, yet it should be sufficient to fairly establish that the engine did emit sparks from which it was possible for the fire to originate and that such fire did probably originate from that cause and from no other. *First Nat. Bank v. Lake Erie & W. R. Co.,* 174 Ill. 36, 43, 44; *Harts v. Chicago & Alton R. Co.,* 184 Ill. App. 123, 126; *O'Connor v. Aluminum Ore Co.,* 224 Ill. App. 613, 619.

The above section of ch. 114, was enacted in 1874. That was long prior to modern highways, automobiles, and the many opportunities for fire to start in the grass and vegetation that grows along the roadside and which are so common today, and which are in no way connected with the operation of railroads. The changes incident to the last 65 years, demand a reasonable construction of this section of the statute. The law must maintain its power of adaptation. An ever expanding future has produced new conditions to which a court cannot close its eyes. Locomotives have undergone vast improvements since the belching Pegasus of 1874. They are now equipped with modern spark arresting devices, while individuals on the open road, feel under no constraint in their conduct toward the origin of fires, which may quickly spread in all directions.

The facts in this case are not similar to those that

existed in such cases as *Atwood v. Chicago M. & St. P. Ry. Co.*, 313 Ill. 59, and *Chicago & Alton R. Co. v. Quaintance*, 58 Ill. 389. In those cases, although the origin of the fire was unknown, yet the evidence afforded no possible theory for the origin of the fire except by sparks emitted from the engine, and under such circumstances the origin of the fire was held to be a question for the jury. In this case the witness, Carpenter, on the morning in question, before appellant's train passed the "Y," saw Charles Nodine burning weeds on the east side of U. S. highway 51, near the "Y." Charles Nodine admits starting a fire north of the intersection of the "Y," and east of appellant's track. He says he started it for the purpose of burning dead grass and vegetation; that it was burning when he left; and that he did nothing to extinguish it. No one saw the origin of any other fire on that day. There is no evidence of the origin of any fire near this place other than that set by Nodine.

Appellees' witnesses who later in the day saw the fire burning, have no knowledge of how it originated. The only engine of appellant company that passed the "Y" on that day prior to the origin of the fire, passed at about 9:30 in the morning. The accident did not happen until 5 o'clock in the afternoon. The fire had been burning for an extended period of time prior to the accident because, the proof shows that it had burned over a large area of ground adjacent to the "Y," and on both sides of appellant's right of way, and along the sides of the highways.

In the state of the record we do not consider appellee's evidence sufficient to establish a prima facie case of negligence against appellant. There is no evidence showing, or tending to show that the engine in question did throw sparks and that the fire was probably caused by such sparks. If the fire was started by the act of another, and not in connection with the operation of the railroad, appellant is not liable.

*Illinois C. R. Co. v. Oswald,* 338 Ill. 270; *Sycamore Preserve Works v. Chicago & Northwestern Ry. Co.,* 366 Ill. 11, 17, 20; reversing 284 Ill. App. 445.

The judgment herein is reversed and the cause remanded.

*Reversed and remanded.*