RALPH L. AGATE, Plaintiff-Appellant, *v.* EDWARD C. KROZKA *et al.,* Defendants-Appellees.

First District (3rd Division)    No. 76-1440

Opinion filed July 20, 1977.—Rehearing denied August 31, 1977.

Klein, Thorpe, Kasson and Jenkins, of Chicago (Franklin W. Klein and Bruce A. Zolna, of counsel), for appellant.

Lisco & Field, of Chicago (Sidney Z. Karasik, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Ralph Agate, brought this action in chancery seeking reformation of the legal descriptions set out in land sale contracts and deeds which he delivered to defendants Edward Krozka and Peter and Ona Ankus. Plaintiff contends that the errors in the legal descriptions were mutual mistakes which resulted in the defendants obtaining more land than the parties had intended. After hearing the testimony adduced by both sides, the trial judge denied plaintiff any relief and plaintiff appeals from that order.

In October 1967, plaintiff was the owner of 60 acres of vacant property at 143rd Street and 108th Avenue located in Orland Park, Illinois. At that time, plaintiff sold five acres of the tract to Carl Osterman for $12,500.

That five acres fronted on 108th Avenue and measured 220 feet wide and 990 feet deep.

The next tract of land sold by defendants was to defendants Peter and Ona Ankus in March 1968. The legal description contained in the Ankus sales contract and deed reads, "The South 220 feet of the North 440 feet of the Southeast Quarter of the Southwest Quarter of Section 5." As written, the deed conveys 6 2/3 acres of land. According to plaintiff, he showed the Ankuses the property and told them that he had five acres for sale. When Mrs. Ankus stated that she did not want that much land, plaintiff told her that under Illinois law he could not sell less than a five-acre tract. In response to her question about the price, plaintiff stated that the purchase price was $3,000 per acre or $15,000 for the five acres. Mrs. Ankus said they would buy the property and wanted to make a down payment, but plaintiff referred her to his attorney. Plaintiff further testified that thereafter the sale was completed.

Approximately one week later, Herman Gee, a friend of plaintiff and a real estate salesman, brought the defendant Krozka to plaintiff's home. Gee had shown Krozka the Ankus property and had accepted a down payment from Krozka without a contract. After plaintiff told Krozka that the Ankus property was sold, he showed him the parcel immediately south. Plaintiff testified that he told Krozka that this piece of land was 220 feet by 990 feet, measured to the middle of the road. When Krozka expressed a preference for the Ankus property, plaintiff offered to sell the second parcel to Krozka for $14,000.00 and to pay next year's taxes. Krozka accepted, and the legal description of the parcel as shown in the contract and deed was, "The South 220 feet of the North 660 feet of the Southeast Quarter of the Southwest Quarter of Section 5 * * *." This resulted in a conveyance of 6 2/3 acres of land to Krozka. Plaintiff testified that posts and wire rope ran along the 990-feet line on the western edge of the property. Plaintiff also stated that for three years after he sold the property he cut the weeds for Krozka up to the 990-foot line.

On June 1, 1968, plaintiff contracted to sell the 18 acres west of the Osterman, Ankus and Krozka parcels to a Dr. Howard. On the same day, plaintiff agreed with Marilyn Henley to sell another piece of the original 60 acres to her. The agreement was to sell Henley a total of 12 acres comprising the eastern 330 feet of the southwest quarter. As a result, the tract of land which Henley was to receive overlapped the written conveyance plaintiff made to the Ankuses and Krozka.

Subsequent to the above sales, plaintiff attempted to obtain a tax division of the property. Plaintiff testified that, pursuant to his direction, a tax division petition was prepared and filed with the county assessor. When plaintiff discovered that the legal description in the Krozka and Ankuses' deeds each described tracts of 6 2/3 acres, plaintiff went to see

defendants. He testified that Mrs. Ankus told him, "I did not make the error; I did not make the mistake." She told him she wanted to discuss it with her son.

In July 1974, plaintiff met with Algis Ankus, the purchasers' son. Algis Ankus told plaintiff that his parents' dog was buried about 50 feet from the western boundary of the property line. Plaintiff took Algis to the tax collector's office, showed him the division made on the map, and indicated that he wanted to have a survey made of the property.

In September 1974, plaintiff had another conversation with Algis Ankus. Plaintiff testified that Ankus said he did not know if "his good judgment should overcome his greed," and that keeping the property would be like "finding a gold brick." Plaintiff further testified that Algis spoke of using the money to take a long vacation or to start business as a druggist.

On cross-examination plaintiff testified that he had inherited the property in 1958 and he did not order a survey until after he had commenced dividing and selling off parcels. Prior to the Osterman sale, there were no markings of any kind on the property and the only metes and bounds marks on the land were directly across the road. Subsequently, there was one metes and bounds mark on the northeast corner and another at the 660-foot line on the northwest end of the tract and none inside the quarter section. Prior to the sale of land to the Ankuses, a survey of the Osterman property was ordered by Gee. Plaintiff was unaware of any survey made of the rest of the quarter section.

Carl Osterman testified on behalf of the plaintiff that he purchased the five-acre tract north of the Ankus property in October 1967. He stated that throughout the previous several years Mrs. Ankus always referred to her "beautiful five acres" and "beautiful view." He first heard her make the comment in 1968 in the presence of her husband and son. At that time she also stated that she thought she had paid too much for five acres.

On cross-examination Osterman testified that in 1968 the Ankus property was covered with weeds and some small trees. A drainage ditch ran along the western edge of the property. A survey was ordered for him four months after he purchased the property. Plaintiff's attorney had prepared the deed and Osterman was positive the attorney had seen the survey. Osterman and the plaintiff were friends.

Herman Gee testified in behalf of plaintiff that he was a real estate salesman and specialized in the sales of tracts five acres and larger. Plaintiff hired Gee to sell 15 acres of real estate. Gee sold the first five-acre parcel measuring 220 feet by 990 feet to Osterman in the fall of 1967. In 1968 he showed Krozka the Ankus property and the tract adjacent to it. After receiving a deposit from Krozka on the first parcel, Gee learned the property had been promised to the Ankuses. Gee than called Krozka and

they went to see plaintiff. Plaintiff had told Gee property prices were improving.

According to Gee, in his first conversation with Krozka, he told Krozka that the parcel measured 220 feet by 990 feet. Since Krozka was disappointed that he could not purchase the Ankus property, plaintiff deducted $1,000 from the price of the Krozka tract. Gee received a $500 commission on the Krozka sale.

On cross-examination Gee testified that at the time of the sale to Osterman, a survey had been prepared at Gee's request. The legal description of that property was contained in the Osterman deed which was prepared by plaintiff's attorney. Gee further testified that he requested a survey of the Krozka property and, to the best of his knowledge, such had been prepared. Gee had not seen the survey, but he believed that it was to be made at the time the deal was closed. Plaintiff never told Gee he had the property surveyed. Gee gave Krozka a business card at the time he discussed the sale of plaintiff's property, but he denied writing anything on the back of the card. When asked whether he had only discussed footage with Krozka and had quoted the figures 220 feet by 1320 feet, Gee replied: "It could be true; it could be true."

Defendant Ona Ankus testified that at the time she went to see plaintiff about purchasing some property, she told him that they were interested in buying 10 acres. Plaintiff told them that the parcel he was showing them was not quite 10 acres. He said he was selling the land for $15,000 and that the tract was more than five acres. She denied telling plaintiff that she was looking for less than five acres. In May 1968 the Ankuses became beneficial owners of the property. Six years later they received a letter from plaintiff's attorney requesting them to sign a deed over to plaintiff for $1. She received two more such letters, but did not reply. One of the letters stated that the tax bill for the property only covered five acres, but she took no steps to correct the bill or to inform the assessor's office of the size of her property. She did file a complaint with the assessor's office claiming that she had received the wrong bill for her 1975 taxes. She also testified that plaintiff had attempted to buy back the land at a higher price, but she refused.

Algis Ankus testified that after his parents received the 1974 letters he had a conversation with the plaintiff. He told plaintiff that the dog was buried on the property so that the latter would not think it was a human grave. Algis denied telling plaintiff that he hoped his good judgment would not be overcome by his greed. Algis explained that what he had said to plaintiff was that it was a greedy thing for plaintiff to try to take the property back from his parents for $1. Algis also testified that he never told plaintiff that he would use the money to start a pharmacy.

On cross-examination Algis testified that plaintiff showed him maps and

drawings which he did not understand. On one occasion he did visit the assessor's office to verify the permanent tax number for his parents' property, but had only seen the computer print out and did not see the assessor's card. At no time did he examine the tax bill for his parents' property.

Defendant Edward Krozka testified that in March 1968 he met with Gee to view plaintiff's property. Gee told Krozka the parcel they agreed upon measured 220 feet by 1320 feet. Gee gave Krozka a business card which contained the following handwriting on the reverse side: "108 and 142, 220 x 1320 Agate." Krozka did not remember who wrote the data, but the card was part of his record concerning the first piece of property he ever bought. Krozka stated that acreage was never mentioned and denied being told by Gee that he was buying only five acres.

Krozka originally was interested in buying the Ankus property, but subsequently was informed that the parcel had been sold. Gee arranged a meeting between plaintiff and Krozka at which Krozka purchased the property immediately south of the Ankus property for $14,000. Krozka testified that he was never told that he was purchasing exactly five acres or less than five acres. Krozka never authorized a survey of the property, was unaware of the existence of the Osterman property, and never heard any reference to a survey of the Osterman property prior to his purchase. In 1969 Krozka received a letter from plaintiff's attorney containing the deed, a title policy, and an affidavit made pursuant to the Plat Act which stated, among other things, that the instrument effects a division of land, each of which is five acres or more in size.

On cross-examination Krozka denied telling Gee that he was interested only in five-acre tracts. On the occasion of viewing the property, Gee did not mention acreage but merely told Krozka that he had some farm land to sell. The first mention of acreage was when Krozka expressed objection to not getting the Ankus property. At that time Gee told him he was getting more than five acres. Plaintiff said "I will give you a reduction and you will get over five acres." It was never specified how much more than five acres Krozka was receiving.

Krozka further testified that he had been paying real estate taxes on the property since 1970. He reimbursed plaintiff for the portion of the 1969 taxes which the latter paid. Krozka called the collector's office and was instructed how to reimburse plaintiff. He did not discuss acreage with the collector's office nor did he ever check the legal description of the property.

On March 29, 1974, Krozka received a letter from plaintiff's attorney advising him that a mistake had been made and requesting the execution of a "correction deed." The letter recited that the tax bill for the property was correct and only covered 990 feet. Krozka continued to pay the 1974

taxes, but did nothing to correct the bill. Krozka received two more letters from plaintiff's attorney, but did not reply to any of them.

In December 1975, Krozka filed a complaint with the assessor's office requesting a deduction in taxes. No mention was made of acreage. He based his request on the parcel being farm land without income. Krozka was not asked the size or dimensions of the property nor did he look at the property card disclosing acreage.

Plaintiff's attorney testified in rebuttal that he drafted the articles of agreement with Krozka in 1968, and that Gee had nothing to do with the provisions therein. He sent the agreement to Gee to obtain Krozka's signature. Krozka did not seek legal advice prior to signing the contract. In January 1969, a warranty deed to the property was delivered to Krozka. The witness testified that he did not order a survey of the Krozka property because he believed the legal description was not difficult. Plaintiff never requested him to order a survey of his property.

■■■ The rule which governs the reformation of deeds is that such is allowed on the ground of mutual mistake of fact only where the proof clearly and convincingly shows that a mistake mutual and common to both parties was made. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760; *Pearce v. Osterman* (1931), 343 Ill. 175, 175 N.E. 416.) In a suit for reformation the plaintiff has a higher burden of proof than in an ordinary lawsuit. (*319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.) It is incumbent upon the plaintiff to establish his case by more than a preponderance of the evidence. (*Biskupski v. Jaroszewski* (1947), 398 Ill. 287, 76 N.E.2d 55.) Some courts have even stated that plaintiff must demonstrate that no reasonable doubt exists as to the mutual intention of the parties. *Schmitt v. Heinz* (1955), 5 Ill. 2d 372, 125 N.E.2d 457; *Kolkovich v. Tosolin* (1974), 19 Ill. App. 3d 524, 311 N.E.2d 782.

■■ Whether the evidence offered to support plaintiff's claim of mutual mistake is sufficient to overcome the presumption that the written instruments expressed the true intent of the parties is primarily a question the trier of fact must determine. (*In re Estate of Law* (1975), 28 Ill. App. 3d 98, 327 N.E.2d 609.) A reviewing court will not disturb the decision of the trial court unless it is manifestly against the weight of the evidence. (*Schmitt v. Heinz.*) In the present case, we cannot say that the trial court was incorrect in holding that the evidence did not clearly and convincingly establish that the legal descriptions contained in the deeds resulted from mutual and common mistake.

Contrary to the testimony offered by plaintiff, both Krozka and Ona Ankus testified that plaintiff never told them that they were purchasing exactly five acres. Krozka testified that when Gee took him to view the property, Gee indicated that the dimensions were 220 feet by 1320 feet.

Krozka further testified that both Gee and plaintiff told him that he would get more than five acres if he purchased the land adjacent to the Ankus property. Similarly, Ona Ankus testified that when she viewed the property, she told plaintiff that she was interested in purchasing a ten-acre tract, and that plaintiff informed her that the parcel was not quite 10 acres, but more than five acres.

■■ The record also establishes that except for the survey of the property sold to Osterman, plaintiff had no surveys made or markings posted on the remainder of the tract. Plaintiff himself testified that he had not seen surveys of the Ankus or Krozka tracts prior to executing the deeds thereto. Plaintiff's attorney and Gee both testified that they had not seen surveys of the parcels prior to the conveyances to defendants. Therefore, it appears that plaintiff did not know the exact acreage he was selling at the time of each conveyance, but was merely selling particular tracts within the larger one he owned. The legal descriptions of the properties were drawn by plaintiff's agents, and they will be presumed to know the contents thereof. See *Hyman-Michaels Co. v. Massachusetts Bonding & Insurance Co.* (1956), 9 Ill. App. 2d 13, 132 N.E.2d 347.

Plaintiff contends that the real estate tax bills for defendant's properties established their knowledge that they had each purchased only five acres. Plaintiff testified, however, that the original tax division petition was prepared pursuant to his directions without any participation or assistance from defendants. Both defendants testified that they never saw their respective records in the assessor's office. Algis Ankus testified that when he went to the assessor's office to check the permanent tax number for his parents' property, he did not examine any card disclosing acreage. Therefore, defendants' failure to correct any error in the real estate record does not establish knowledge on their respective parts that plaintiff made erroneous conveyances of land to them.

■■ In regards to the conflicting testimony of plaintiff and Algis concerning their conversation about the 1 2/3 acres, the trial court saw and heard the witnesses and it was within the province of that court to resolve any conflicts. (*Quist v. Streicher* (1960), 18 Ill. 2d 376, 164 N.E.2d 44.) In the present case, the trial court apparently chose to believe the testimony of Algis and we will not disturb that finding. This is likewise true of the other evidentiary conflicts.

Plaintiff further maintains that price negotiations for the parcels was made on a per acre basis. He testified that it was his intent to sell the tracts for $3,000 per acre or $15,000 for five acres. The price of $14,000 for the Krozka property was accepted because plaintiff felt a "moral obligation" since Krozka was disappointed about not being able to purchase the Ankus tract. Defendants testified, however, that the negotiations were based on the particular parcels shown to them and that exact acreage was

never discussed. Ona Ankus could not recall whether plaintiff quoted a per acre price to her, while Krozka testified that the price quoted to him was based on the dimensions given to him by Gee. This court cannot say that the decision of the trier of fact is against the manifest weight of the evidence, or that the trial court incorrectly held that the evidence did not clearly and convincingly establish a mutual and common mistake in the legal descriptions.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON, P. J., and JIGANTI, J., concur.