GORDON A. PARRISH, SR., *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* THE CITY OF CARBONDALE, Defendant and Counterplaintiff-Appellant.— (CARBONDALE MOBILE HOMES, Third-Party Defendant-Appellee.)

Fifth District   No. 77-353

Opinion filed May 29, 1978.

John Womick, of Carbondale, for appellant.

Wolff, Jones & Lawder, of Murphysboro, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by the city of Carbondale (city) from a judgment of the circuit court of Jackson County, allowing the reformation of an agreement for an easement and denying the relief sought by the city in its countercomplaint.

The easement agreement involved was entered into between appellees, Gordon A. and Violet Parrish, and the city on November 1, 1965. By its terms the above-mentioned appellees granted the city a perpetual easement across their land, which was located north of and outside the corporate limits of the city and used as a mobile home park, for the purpose of the construction of a water main and for its permanent maintenance and repair. A similar easement was executed in 1964 with respect to sanitary sewers. Both easements traversing the property of the Parrishes were obtained so that the city could supply utility services to an industrial park area being developed to the north of the Parrishes' mobile home park.

The 1965 water easement expressly reserved to the Parrishes the right to tap on to the line as necessary to develop their land, provided they pay the usual and customary charges for such taps. As a result of a preexisting city rule requiring any person whose property was not located within the corporate limits of the city but supplied with utility services to execute an annexation agreement, an annexation agreement was also entered into between these parties contemporaneously with the water easement.

The annexation agreement was limited to a five-year period as presumably required by statute, and basically provided that the Parrishes (or their heirs, successors or assigns) would annex their land to the city upon its becoming contiguous thereto and that, in the meantime, the landowners could attach to and use the water and sanitary sewer facilities as required "and at the water and sewer rates as are established from time to time for all users thereof." Apparently, the property never became contiguous during the agreement's life. No complaint was made with respect to a party's meeting any obligations imposed under the annexation agreement.

Count I of the Parrishes' complaint, granted by the instant judgment, sought reformation of the easement on the basis of mutual mistake, alleging that the agreement as executed did not reflect the parties' agreement as to service charges and that such failure was the result of a scrivener's error. It further alleged that the true agreement was that in consideration of the Parrishes' execution of the easement, the city would furnish water and sewer service to the property of the Parrishes at the same water and sewer rates being charged, from time to time, to users

located within the corporate limits of the city. The court agreed and ordered such a reformation.

The city's countercomplaint (and third-party complaint) sought recovery of the difference between the water and sewer charges assessed "outside" users pursuant to a 1972 city ordinance (1½ times the rate of city users), which rate the city alleged was applicable to the Parrishes, and the city or "inside rates" which appellees had persisted in paying since June 30, 1972. This countercomplaint was grounded on the assertion that the agreement to charge city rates expired with the annexation agreement. The court found against the city as to the countercomplaint.

The main contention of the city on appeal is that the appellees did not meet their burden of proof in establishing that a mutual mistake of fact did occur and what the original agreement of the parties was. In other words, they contend that the trial court's factual determinations were erroneous. After consideration, we find that the trial court did not err in this respect. Before stating our reasoning, however, we will address two other contentions of the city.

Broadly speaking, the city argues that even if the easement should have been reformed as ordered by the court, error was committed when the court allowed Gordon and Violet Parrish to add an additional party plaintiff to the suit, a partnership in which they were two of the partners, and entered an order that allowed the partnership to benefit from a convenant which was not assignable to it.

More specifically, the city asserts that the addition of the partnership as a plaintiff was error since it came subsequent to final judgment in violation of section 46(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(1)). Although recognizing that the written judgment was not entered until June 6, 1977, the city feels that an order of June 2, 1977, adding the partnership came subsequent to "final judgment" since such date was subsequent to March 9, 1977, when the trial judge sent a letter to the attorneys concerning what decision he had reached in the case.

On February 4, 1977, three days prior to the hearing in this cause, the city filed a motion to amend its countercomplaint to add Carbondale Mobile Homes, a partnership comprised of Gordon, Violet, Gregory and Danny Parrish, as a party defendant in its belief that the real estate involved in the countercomplaint was owned by the partnership. Testimony at the hearing revealed that Gordon and Violet did convey the property on February 11, 1972, to a partnership, Gordon A. Parrish Enterprises, with the four individuals mentioned above as its partners. Although both parties on appeal assume that this motion was granted, and several record notations, particularly the March 9, 1977, letter of the trial judge, seem to support such a belief, the fact of the matter is there is no clear indication in the record that the motion ever was granted.

An order was entered, however, on February 7, 1977, purportedly on plaintiffs' motion, which amended the Parrishes' complaint "by adding as Parties Plaintiff Gregory M. Parrish, Danny L. Parrish, Gordon A. Parrish, Sr., and Violet Parrish, partners doing business as Gordon A. Parrish Enterprises, a Partnership." In addition, the record contains a motion made in April to accomplish what appears to have been done by the February order. As already mentioned, an order adding the partnership as a plaintiff was entered on June 2, 1977.

■■ Section 46(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(1)) provides that at any time prior to final judgment amendments may be allowed introducing any party who ought to have been joined as a plaintiff or defendant. If the February 7 order is taken at face value, it is abundantly clear that the partnership was added as a party prior to final judgment. Moreover, even if only the June 2 order is considered, we would find the amendment to be timely. Supreme Court Rule 272 (Ill. Rev. Stat. 1975, ch. 110A, par. 272) provides that if at the time of announcing the final judgment the judge requires the submission of a form of written judgment to be signed by him, the judgment becomes final only when the signed judgment is filed. In this instance, the letter memorandum of the judge clearly required the plaintiffs' attorney to prepare an appropriate judgment. That order was entered on June 6, 1977. There is no reason to treat a letter announcement differently than an oral announcement especially where it indicates it is preliminary to and contains instructions for the content of the formal judgment which is to follow. Accordingly, the instant judgment was not final until June 6, and the court's allowance of the motion on June 2 was proper under section 46(1).

The city next contends that the easement as reformed was not a covenant running with the land but merely a personal covenant for the benefit of Gordon and Violet Parrish and that therefore the court erred in reforming the easement in favor of the partnership of the elder Parrishes and their two sons. We find this contention to be meritless.

First, we note that the easement itself states that it should extend to and be binding upon the heirs, executors, administrators, successors, and assigns of the parties. Furthermore, the acceptance of the city's position in this regard would herald the destruction of the benefits which it receives under the easement as well as the partnership's, namely, the right to perpetual access for maintenance and repair of the water main.

■■■ Generally, covenants creating easements will run with the land so as to bind subsequent owners. (14 Ill. L. & Prac. *Covenants* §5, at 431 (1968).) The test whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not

immediately concerning the thing granted. (*Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.*, 313 Ill. 59, 144 N.E. 351; 14 Ill. L & Prac. *Covenants* §5, at 429-30 (1968).) If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or estate conveyed. *Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.; Tucker v. Carter Oil Co.*, 315 Ill. App. 264, 43 N.E.2d 99; 14 Ill. L. & Prac. *Covenants* §5, at 430 (1968).

■■ We would be hard pressed to devise a covenant which would more readily meet the above criteria than the covenant contained in this easement. The easement undoubtedly affects the enjoyment of the land as well as its value.

The city argues further that the easement cannot be a covenant running with the land since it does not set forth a description of the land to be benefited by the city's obligations. We find this argument specious. The testimony revealed that there was no confusion as to what property was involved. The land is adequately described in the annexation agreement which was entered into simultaneously with and as a direct result of the instant easement.

■■ Reformation of a written instrument should be allowed only when clear and convincing evidence compels the conclusions that the instrument as it stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or mistake by one party and fraud by the other. (*319 South LaSalle Corp. v. Lopin*, 19 Ill. App. 3d 285, 311 N.E.2d 288; *LaSalle National Bank v. American Insurance Co.*, 14 Ill. App. 3d 1027, 303 N.E.2d 770; *Booth v. Cole Corp.*, 121 Ill. App. 2d 77, 257 N.E.2d 265.) Both elements must be present: The mistake must be mutual and an agreement other than that expressed in the writing must have been reached. (*LaSalle National Bank v. American Insurance Co.;* see also *Pulley v. Luttrell*, 13 Ill. 2d 355, 148 N.E.2d 731.) A reformation action rests upon the theory that the parties came to an understanding but in reducing it to writing, through mutual mistake or by mistake on one side and fraud on the other, some provision agreed upon was omitted, and the action is brought to so change the instrument as written so as to conform to a contract agreed upon by inserting the omitted provisions or striking out the one inserted by mutual mistake. (*319 South LaSalle Corp. v. Lopin; Harley v. Magnolia Petroleum Co.*, 378 Ill. 19, 37 N.E.2d 760.) In a reformation suit, the plaintiff has a higher burden of proof than in an ordinary civil lawsuit (*Agate v. Krozka*, 51 Ill. App. 3d 126, 366 N.E.2d 458; *319 South LaSalle Corp. v. Lopin*), and must prove a case by very strong, clear and convincing evidence (*319 South*

*LaSalle Corp. v. Lopin; State Farm Mutual Automobile Insurance Co. v. Hanson,* 7 Ill. App. 3d 678, 288 N.E.2d 523).

■■ Whether the evidence offered to support plaintiffs' claim of mutual mistake is sufficient to overcome the presumption that the written instrument expressed the true intent of the parties is primarily a question that the trier of fact must determine. (*Agate v. Krozka; In re Estate of Law,* 28 Ill. App. 3d 98, 327 N.E.2d 609.) A reviewing court will not disturb the decision of the trial court unless it is manifestly against the weight of the evidence. (*Schmitt v. Heinz,* 5 Ill. 2d 372, 125 N.E.2d 457; *Agate v. Krozka.*) In the present case, the court found, after hearing the witnesses and viewing the exhibits, that the proof was clear and convincing that a mutual mistake was made by omission in that the parties agreed that in consideration of the plaintiffs granting a perpetual water easement to the city, the city would reciprocate by granting the plaintiffs a perpetual right to attach to and use its water and sanitary facilities at the same rates as established from time to time for all users in the city limits of Carbondale. We cannot say that the court was incorrect in so holding.

Gordon Parrish testified at the trial and the plaintiffs also produced the testimony of five others, including the former city attorney who negotiated the agreement, the former mayor and two former city councilmen. All of these witnesses stated that the easement did not contain the whole agreement in that it failed to mention the agreement that the plaintiffs be charged the same rates for water and sewer service as in-city users.

The former city attorney, J. Edward Helton, testified that in 1965 all users of these utilities paid the same rates but there had been discussion about charging higher rates to those outside the city limits and that Mr. Parrish wanted to be sure that paying the city rates was part of the consideration for the easement. In fact, the rates were discussed because Parrish decried, "I won't grant it [the easement] unless you agree that you won't charge me any more for the rates than they do the people inside the city." Although Mr. Helton could not remember specifically telling Mr. Parrish that the right to such rates was to be perpetual, it was clearly understood that the benefit was to be for the period during which the land was outside the corporate limits.

In addition, Gordon Parrish testified that after discussing the duration of the right to city rates with Helton it was his understanding that the benefit was forever. Former mayor Miller testified that the easement agreement was not limited as to time and that it was his understanding that the agreement as to rates was to last as long as the easement existed.

With respect to how this provision of the agreement came to be left out of the written easement, the testimony reveals that the city attorney

Helton's preparation of the easement was interrupted by someone who took the agreement to the Parrishes' attorney, W. Troy Barrett, for inspection. Mr. Helton did not see the easement again until after its passage, at which time he noticed that it did not contain the total agreement. The easement was not reformed at that time presumably because of the general belief that the land would be annexed shortly, mooting the efficacy of the provision omitted. Attorney Barrett, who was not privy to the negotiations or the specifics of the agreement between the parties, merely added some provisions not relevant to this appeal.

In view of this evidence, the findings of the court were correct, and the reformation was properly granted by addition of the instant terms.

For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.