TEXAS EASTERN TRANSMISSION CORPORATION, Plaintiff-Appellant, *v.* DAVID P. McCRATE *et al.*, Defendants-Appellees.

Fifth District  No. 78-468

Opinion filed September 12, 1979.

Limbaugh, Limbaugh & Russell, of Cape Girardeau, Missouri, and Spomer & Spomer, of Cairo, for appellant.

William F. Meehan and James A. Flummer, both of Cairo, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

The plaintiff, Texas Eastern Transmission Corporation (hereinafter referred to as Texas Eastern), brought this action in the Circuit Court of

Alexander County against David P., Elizabeth, Joseph E. and Harriet McCrate for reformation of a deed conveying a parcel of real estate from the McCrates to plaintiff. Plaintiff appeals from the decree of the circuit court denying reformation of the deed based on alleged mutual mistake.

The evidence discloses that Texas Eastern entered into negotiations with David and Joseph McCrate in February 1975 for the purchase of a parcel of land in Alexander County, Illinois. The negotiations were concluded, and a warranty deed was executed by the McCrates and delivered to Texas Eastern, which paid the McCrates $2205, or $350 per acre, for the land. Texas Eastern caused a plat to be prepared, and it was then discovered that the deed described the starting point of the property conveyed as being 530 feet from the intersection of Texas Eastern's pipeline and the center line of the East Cape Girardeau and Clear Creek Levee. Texas Eastern contends that the parties intended the conveyance to be a parcel of land with a starting point 441 feet from the intersection of the pipeline and the levee center line and extending to the low water mark of the Mississippi River, containing a total of 6.3 acres. On that basis, according to Texas Eastern, it had paid the McCrates the purchase price agreed upon of $350 per acre or $2205. The land, if described as having a starting point 530 feet from the intersection of the pipeline and the levee center line and extending to the low water mark of the Mississippi River, encompassed only 4.5 acres of land.

Two conflicting descriptions of the parcel of land were admitted into evidence. Plaintiff's Exhibit 1 indicated its starting point as 441 feet from center of the levee and pipeline intersection, and Joint Exhibit 1 specified a starting point which was 530 feet from such intersection. The inconsistency in the two descriptions apparently arose from an error made by one of Texas Eastern's employees in preparing the description of the land for the deed. The measurement from the center of the levee to its outside base is 89 feet. This 89-foot distance was added to the 441-foot measurement in arriving at the 530-foot call referred to in Joint Exhibit 1; however, Texas Eastern's employee was not aware that the dimensions of that portion of the land underlying one-half of the levee was already included in the 441-foot measurement. The McCrates contend that they were not aware of Plaintiff's Exhibit 1, and that they relied on Joint Exhibit 1 in their negotiations. Texas Eastern argues that Joint Exhibit 1 was not prepared until February 18, 1975, and the negotiations with David McCrate took place in the first part of February 1975.

Texas Eastern had a second deed prepared using the 441-foot measurement as the starting point and presented it to the McCrates for execution. The McCrates refused, contending that it was not their intention to sell Texas Eastern the land as described in the second deed.

The McCrates assert that they had relied on the description supplied by Texas Eastern and that they had relied on Texas Eastern's calculation that the land so described comprised 6.3 acres. They further contend that it was their understanding that Texas Eastern intended to purchase land which consisted of a hole washed out by the Mississippi River as a result of Texas Eastern's laying of a pipeline at the river bank and, in addition thereto, an apron surrounding the hole of sufficient size to allow the hole to be dressed down to prevent further erosion.

Plaintiff has perfected this appeal from the judgment of the trial court entered in favor of defendants and against plaintiff on plaintiff's suit for reformation of the original deed of defendants on the grounds of mutual mistake in locating the starting point of the description.

■■ In order for the court to reform a deed upon the grounds of mistake, the proof must evidence mistake of fact and not of law, one that is mutual and common to both parties and in existence at the time the instrument was executed. Further, the evidence must establish that, at the time of execution, the parties intended to say a certain thing but, by mistake, said another. *David v. Schiltz* (1953), 415 Ill. 545, 114 N.E.2d 691; *Schmitt v. Heinz* (1955), 5 Ill. 2d 372, 125 N.E.2d 457.

In the instant case, the evidence indicates that both parties to the transaction understood and agreed that the McCrates were selling and Texas Eastern was purchasing 6.3 acres of land. Both David and Joseph McCrate testified that they intended to sell 6.3 acres of land. However, both testified that they did not have the property surveyed to arrive at the description contained in the deed and that the sellers relied on plaintiff's representation in Joint Exhibit 1 that the land described comprised 6.3 acres. The purchase price of $350 per acre for a total of $2205 further evidences the intend of the parties to convey 6.3 acres of land as specified in the deed.

■■ Counsel for the McCrates correctly argues that quantity descriptions in a deed are not conclusive and are considered to be the least reliable of the calls in a deed. However, in certain circumstances quantity calls may be controlling. The Illinois Supreme Court has held that:

"Quantity, in the law, is regarded as the lowest grade call in point of reliability, simply because of the fact that a quantity call is not ordinarily intended to be exact and to control other calls in an instrument. But it must be conceded that instances might arise in which the quantity call might be the very one intended and the only one to be depended upon as expressing the intention, by reason of the fact that the other calls are erroneous or impossible." (*Brown v. Ray* (1924), 314 Ill. 570, 583-84, 145 N.E. 676, 680.)

Here, the evidence is uncontradicted that the parties intended to transfer

6.3 acres of land. Further, the evidence shows that if a starting point 530 feet from the pipeline-levee center intersection were used, it would be necessary to convey land extending 89 feet into the Mississippi River to include 6.3 acres of land. It is also evident that if the starting point 530 feet from the pipeline-levee center intersection were used, the calls would not terminate on the low water mark of the Mississippi River, which was intended to be used as a monument; however, if the 441-foot starting point was used, the calls would result in the transfer of 6.3 acres on the land side of the low water mark of the river.

Since the parties intended that 6.3 acres of land on the land side of the Mississippi River be conveyed, we conclude that the parties intended to use the 441-foot measurement to the starting point and that the use of the 530-foot measurement was inaccurate.

■■ This court held in *Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243, that a reformation action rests upon the theory that the parties came to an understanding but in reducing it to writing, through mutual mistake or by mistake on one side and fraud on the other, some provision agreed upon was not properly incorporated into the written instrument. The action is brought to change the instrument as written so as to conform to the contract agreed upon. (See also *319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.) In a reformation suit, the plaintiff has a higher burden of proof than in an ordinary civil lawsuit (*Parrish v. City of Carbondale*; *Agate v. Krozka* (1977), 51 Ill. App. 3d 126, 366 N.E.2d 458; *319 South La Salle Corp. v. Lopin*). In *Parrish v. City of Carbondale*, the court held that the reformation of a written instrument should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it now stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or mistake by one party and fraud by the other. Both elements must be present: The mistake must be mutual and an agreement other than that expressed in the writing must have been reached.

■■ Whether the evidence offered to support plaintiff's claim of mutual mistake is sufficient to overcome the presumption that the written instrument expressed the true intent of the parties is primarily a question that the trier of fact must determine. (*Parrish v. City of Carbondale*; *Agate v. Krozka*; *In re Estate of Law* (1975), 28 Ill. App. 3d 98, 327 N.E.2d 609.) A reviewing court will not disturb the decision of the trial court unless it is manifestly against the weight of evidence. *Parrish v. City of Carbondale*; *Schmitt v. Heinz*; *Agate v. Krozka*.

■■ In the present case, the true intention of the parties, as manifested by the evidence introduced at the trial, was that defendants were to convey

to plaintiff 6.3 acres of real estate on the land side of the low water mark of the Mississippi River in return for plaintiff's payment to defendants of the purchase price of $350 per acre. The proof was clear and convincing that a mutual mistake resulted from the failure of the parties to establish the correct point of beginning in the deed in order to effectively consummate the parties' intention to transfer such 6.3 acres of real estate. Therefore, the decision of the trial court was manifestly against the weight of the evidence and must be reversed.

Texas Eastern also contends that the McCrates admitted that the starting point 441 feet from the intersection of the pipeline and the center line of the levee was correct in their original answer filed in this cause. With leave of the trial court, the McCrates filed an amended answer denying that such measurement was correct. Statements of a party contained in an unverified pleading, which are superseded by subsequent pleadings, may be admitted into evidence as admissions against interest. The facts contained in such unverified, superseded pleadings are competent evidence which may be considered, although they are not stipulations which have the effect of withdrawing a fact from issue by dispensing wholly with the need for proof of that fact. (*Kleb v. Wendling* (1978), 67 Ill. App. 3d 1016, 385 N.E.2d 346.) Therefore, the original failure of defendants to deny the disputed fact which is the very basis of this cause does not preclude them from doing so later.

Defendants further contend that plaintiff should be denied recovery because of the fact that Texas Eastern, in preparing and presenting a deed containing a description of land other than that which it intended to purchase, committed a unilateral mistake for which defendants bore no responsibility. We find no merit in this reasoning. While the error in improperly preparing the deed was made by an agent of Texas Eastern, the mistake the court is asked to remedy was the mistake attributable to both parties in transferring to plaintiff real estate other than that the defendants had agreed to sell and the plaintiff had agreed to buy. Were it otherwise, it is difficult to conceive of an instance in which any written instrument would be reformed by the courts because, of necessity, one of the parties customarily assumes responsibility for its physical preparation. Here, it was as much the responsibility of defendants to properly convey the land it had agreed to sell and for which they were being compensated as it was the obligation of the plaintiff or the person or persons who acted as scrivener.

The final issue raised by this appeal is whether the trial court properly denied Texas Eastern's motion filed pursuant to section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.3). We do not find appellant's argument in support of this issue persuasive, in view of the

fact that the McCrates readily admit that they believed they were conveying 6.3 acres after being advised by Texas Eastern that the land described in Joint Exhibit 1 contained 6.3 acres.

For the foregoing reasons, the order of the circuit court of Alexander County entering judgment in favor of defendants is reversed.

Reversed.

JONES, P. J., and KARNS, J., concur.