# Illinois Official Reports

## Appellate Court

---

### *Danhauer v. Danhauer*, 2013 IL App (1st) 123537

---

| | |
|---|---|
| Appellate Court Caption | DANIEL A. DANHAUER and DEBORAH L. SUPIS, as Executors of the Estate of Daniel J. Danhauer, Deceased, Petitioners-Appellants, v. JEANNE NEWTON DANHAUER, Respondent-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3537 |
| Filed | December 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute between decedent's children by his first wife and his second wife as to who should receive his individual retirement account, the trial court properly denied the children's motion for substitution of judge for cause, since their allegations did not constitute "cause" for purposes of section 2-1001(a)(3) of the Code of Civil Procedure, parol evidence related to a change in the beneficiary of the account in the course of a merger of the account holder with another brokerage and the second wife's later use of her authority as power of attorney to correct the alleged "mistake" was properly admitted in evidence, and the testimony of one of decedent's sons was found inadmissible under the Dead-Man's Act; however the entry of summary judgment for decedent's second wife was reversed and the cause was remanded for further proceedings on the ground that a genuine issue of material fact existed as to whether decedent intended to change the beneficiary or a mistake was made by the account holder. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-P-003455; the Hon. James G. Riley, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part.<br>Cause remanded. |

Counsel on
Appeal

David A. Novoselsky and Edward J. Stawicki, both of Novoselsky
Law Offices, of Chicago, for appellants.

Clarke M. Gillespie III, of Kubasiak, Fylstra, Thorpe & Rotunno PC,
of Chicago, for appellee.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with
opinion.
Justices Cunningham and Delort concurred in the judgment and
opinion.

**OPINION**

¶ 1 The petitioners, Daniel A. Danhauer and Deborah L. Supis, as executors of the estate of Daniel J. Danhauer, deceased, appeal the circuit court order which denied their petition to substitute the judge under section 2-1001(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1001(a)(3) (West 2012)) and granted summary judgment under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)) in favor of the respondent, Jeanne Newton Danhauer. On appeal, the petitioners argue that the circuit court erred when it: (1) denied their petition for substitution of judge for cause; (2) determined that the 2008 beneficiary designation form was ambiguous and admitted parol evidence; and (3) refused to allow Daniel A. Danhauer to testify during the hearing on the respondent's motion regarding statements made by the decedent. For the following reasons, we affirm in part and reverse in part.

¶ 2 On July 8, 2010, the petitioners filed for probate of the 2004 will of Daniel J. Danhauer, stating the following facts. On February 19, 2010, at the age of 84, Daniel J. Danhauer died from a failure to thrive and advanced dementia. According to the death certificate, the decedent failed to thrive for several months before his death and had suffered from advanced dementia for several years before his death. The decedent's heirs included five children from his first marriage: Susan M. Clark, Kathleen A. Jacobs, Sandra L. Fuelts, and the petitioners; and his second wife, the respondent, whom he married in 1994 following the death of his first wife two years earlier.

¶ 3 The petition states that the decedent left a pour-over will, dated June 3, 2004, which provides that the estate's assets pour over into the Daniel J. Danhauer Trust under trust authority dated November 15, 1991. The decedent's children are named beneficiaries of the trust, but the respondent is not. According to the petition, five months before his death, on September 17, 2009, the decedent signed a second will, an amendment to the trust, and

- 2 -

documents assigning power of attorney (POA) for health care and property to the respondent. The beneficiaries of the trust remained unchanged.

¶ 4 According to the petition, on January 21, 2010, the decedent's physician, Dr. Laura Saelinger-Shafer, wrote a letter to the respondent stating that the decedent's dementia had rapidly progressed over the past year, leaving him with impaired memory and judgment, and that he was no longer competent to make financial decisions.

¶ 5 The petitioners further allege that, on February 18, 2010, the day before the decedent died, the respondent signed, as POA, a beneficiary form on the decedent's individual retirement account (IRA) held at Morgan Stanley Smith Barney (Morgan Stanley), worth approximately $110,000. The 2010 beneficiary form changed the beneficiary from the decedent's trust to the respondent.

¶ 6 On February 23, 2010, the respondent filed a petition to admit the 2009 will for probate. On December 8, 2010, the circuit court admitted the 2009 will and issued letters of office naming the petitioners supervised co-executors of the decedent's estate.

¶ 7 On March 24, 2011, the petitioners requested that the court issue citations to several financial and medical institutions because they believed that the respondent had unlawfully withdrawn assets from the estate. Morgan Stanley filed more than one motion for leave to file an interpleader complaint and for declaratory judgment, seeking to determine the proper beneficiary to the IRA account. However, the trial court denied Morgan Stanley's motions.

¶ 8 On April 10, 2012, the respondent filed a "Petition for Turnover Order of IRA Account Funds," alleging the following. In 2002, the decedent named the respondent beneficiary to his IRA account, which was held at Smith Barney at that time. On September 7, 2007, upon Smith Barney's merger with Citibank, the decedent was required to complete a new beneficiary designation form in which he again named the respondent as the beneficiary. In November 2008, upon Citi Smith Barney's merger with Morgan Stanley, the decedent was again required to complete new beneficiary paperwork. According to the petition, the decedent instructed his financial advisor, Mark Ratay, and Ratay's assistant, Chastity Peterson, to transfer his accounts, including the IRA, without making any changes to his listed beneficiaries. As of that date, the trust was the named beneficiary on the decedent's accounts, except the IRA, which listed the respondent as beneficiary. The petition further alleges that Ratay and Peterson made a mistake and changed the beneficiary on the IRA account from the respondent to the trust. On February 4, 2010, the respondent provided Peterson with her POA documents. On February 18, 2010, Peterson faxed an IRA designation of beneficiary form to the respondent to correct the beneficiary information, which the respondent completed and faxed back to Peterson. The respondent attached copies of the various beneficiary forms which substantiate the allegations contained in her petition.

¶ 9 In response, the petitioners argued that the respondent did not have authority as POA to change the beneficiaries on the decedent's accounts under section 3-4 of the Illinois Power of Attorney Act (755 ILCS 45/3-4 (West 2010)), which prohibits an agent from changing beneficiaries. They further argued that, based on Dr. Shafer's letter, the decedent was incompetent at the time he signed the POA documents. The petitioners attached the

transcripts of the depositions of Ratay and Peterson in support of their argument that the decedent's 2008 beneficiary designation form should be honored.

¶ 10    Ratay testified that he had worked as the decedent's financial advisor since 1985. In 2008, Ratay requested the decedent's permission to transfer his accounts from Citi Smith Barney to Morgan Stanley. Ratay's assistant, Peterson, sent paperwork to the decedent, who signed the forms on November 27, 2008. Sometime before the decedent died, his children contacted Ratay to find out the beneficiary information on all of the accounts. At that point, he and Peterson realized a mistake was made because the decedent had always wanted the respondent to inherit the IRA account. Ratay testified that the 2008 beneficiary form did not match what the decedent had "always said he wanted to do." While he admitted it was possible the decedent had changed his mind, Ratay did not believe that the decedent intended to change the IRA beneficiary because he never expressed such an intention.

¶ 11    Peterson testified that she had known the decedent since she began working for Smith Barney in 1998. She knew that the IRA account was the only account with the respondent listed as beneficiary. In 2008, during Citi Smith Barney's merger with Morgan Stanley, Peterson sent account transfer paperwork to the decedent. She testified that she wrote in the decedent's name but that he completed the beneficiary sections. Peterson stated that she made some corrections, including redacting the date of birth because trusts do not generally include one and correcting the relationship to "trustee." She became aware of the beneficiary mistake when the respondent contacted her in February 2010. Peterson recalled informing the respondent that the change was Morgan Stanley's mistake because the decedent had wanted everything to transfer without any changes. She explained that, at the time of the 2008 merger, she called Smith Barney and requested the most recent beneficiary designation for the IRA account and received the wrong information. Peterson passed on the incorrect information to the decedent, who entered the information on the Morgan Stanley documents. She testified that the decedent never indicated that he wanted to change the beneficiaries on any of his accounts and had stated that he wanted the accounts set up in exactly the same manner. Peterson testified that, as of November 2008, the decedent was actively monitoring the performance of his accounts with her and Ratay, and she believed that he was aware of his actions.

¶ 12    The petitioners also attached an affidavit by Daniel A. Danhauer, which states that, during Christmas 2008, the decedent told him that the trust should be the beneficiary of the Morgan Stanley IRA.

¶ 13    On June 1, 2012, the circuit court denied the respondent's petition to turnover the IRA funds but allowed her to file an amended petition by July 2, 2012. During the hearing, the petitioners objected to the respondent bringing in any parol evidence, arguing that the court should consider only the four corners of the 2008 beneficiary designation form. The petitioners argued that the 2010 beneficiary designation form was invalid because the respondent exceeded her POA authority. The court, however, determined that there was an ambiguity in the decedent's intended beneficiary. The court agreed that the POA statute prohibits an agent from changing an account's beneficiary, but it determined that the respondent had used her POA to correct a mutual mistake. The court stated that, even if the

POA method used by the parties to correct the mistake was incorrect, the respondent could proceed under a constructive trust theory. The court then allowed the respondent to call Peterson to testify, which she did consistent with her deposition testimony. However, the wrong account paperwork was brought to the hearing, and the court denied the respondent's petition because there was no proof that the IRA still existed. Although the court denied the respondent's petition, it stated that the respondent could refile her claim after she obtained the correct account numbers and documentation.

¶ 14     On July 2, 2012, the respondent filed a motion for summary judgment under section 2-1005 of the Code or declaratory judgment under section 2-701 of the Code (735 ILCS 5/2-701 (West 2012)). She argued that there was no dispute of fact that the beneficiary designation on the IRA was changed due to a mutual mistake by Morgan Stanley and the decedent and prayed that a constructive trust be imposed to correct the mistake. The POA, will, trust, and IRA documents, along with the deposition transcripts of Ratay and Peterson, were attached to the motion.

¶ 15     On August 8, 2012, the petitioners' response to the summary judgment motion was due, but instead they filed a motion for an extension of time and a petition for substitution of the judge for cause under section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 2012)). The petition stated that the June 1, 2012, hearing on the respondent's petition to turn over the IRA funds demonstrated that the circuit court had prejudged the dispute and possessed a bias in favor of the respondent. The petition particularly noted the following comments made by the trial court:

> "I don't disagree with what [counsel for petitioner] says [regarding POA powers]. But all we're going to do is have another six-month delay while they file some trust document indicating somebody is holding it as a constructive trust.
>
> * * *
>
> So if the POA can't do it, then certainly somebody is holding this money under a constructive trust theory.
>
> * * *
>
> The issue is whether or not [counsel for respondent] could prove up the mistake that took place and whether or not the actions that happened to correct or change the mistake were viable. That's what we're doing.
>
> * * *
>
> Right, so I'm going to stick it to some nice 85-year old lady because the bank can't give me the link documents. Forget it. Not happening. That's not fundamental fairness. That's not due process to anybody. We're trying to get to the bottom line here of who owns this [IRA] account, right?"

¶ 16     The petitioners also highlighted comments by the court in which it told counsel for the petitioners to "be quiet" and stated that it was "confused" and that there was "ambiguity all over this courtroom." Based on these comments, the petitioners alleged that the circuit court was biased in favor of the respondent and affirmatively undertook the role of an advocate for the respondent.

¶ 17    On August 23, 2012, the court denied the petitioners' motion for an extension of time and petition for substitution of judge. A hearing on the respondent's motion for summary judgment then proceeded.

¶ 18    During the hearing, the petitioners objected to the respondent's references to parol evidence, arguing that the 2008 beneficiary form naming the trust is unambiguous. The petitioners further objected to evidence of the decedent's intentions through the testimony of Peterson based on the Dead-Man's Act (735 ILCS 5/8-201 (West 2012)). The court, however, determined that Peterson was not an interested party and, therefore, her testimony was admissible under an exception to the Dead-Man's Act. The court also determined that Daniel A. Danhauer's affidavit was inadmissible under the Dead-Man's Act because he was an interested party. The petitioners then sought to have Daniel testify, but the circuit court denied that request. The court stated that the petitioners failed to file a response to the motion and it was not letting them "morph this into an evidentiary hearing."

¶ 19    Based on the record before it, the court determined that there was a mistake made by Morgan Stanley, not by the decedent. It also found that Morgan Stanley discovered the error and sought to correct the error by having the respondent sign a new beneficiary form. The court found it relevant that the decedent never sought to make any account changes in 2008, but he was only following the directions of Morgan Stanley to complete the transfer of his accounts from Citi Smith Barney. The court granted the respondent's motion for summary judgment and found the IRA account belongs to the respondent as there was no evidence contradicting the fact that the 2008 beneficiary change was a mistake. The court order further stated that Morgan Stanley was to pay the IRA funds to the respondent.

¶ 20    On September 21, 2012, the petitioners moved for reconsideration of the court's August 23 denial of their petition for substitution of judge and grant of the respondent's motion for summary judgment. That motion was denied on October 17, 2012, and this appeal followed.

¶ 21    The petitioners first argue that the circuit court erred in denying their petition for substitution of judge for cause. They argue that their petition should have been decided by another judge, not the one named in the petition. We disagree.

¶ 22    Because our judgment rests on the interpretation and application of section 2-1001(a)(3) of the Code, we apply *de novo* review. *In re Estate of Wilson*, 238 Ill. 2d 519, 552 (2010). Section 2-1001(a)(3) of the Code provides that a substitution of judge may be had in a civil action "[w]hen cause exists." 735 ILCS 5/2-1001(a)(3) (West 2012). This provision further states:

"(i) Each party shall be entitled to a substitution or substitutions of judge for cause.

(ii) Every application for substitution of judge for cause shall be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The petition shall be verified by the affidavit of the applicant.

(iii) Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition. The judge named in the petition need not

testify but may submit an affidavit if the judge wishes. If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition." 735 ILCS 5/2-1001(a)(3) (West 2012).

¶ 23 In *Wilson*, the supreme court considered whether a circuit judge who is the subject of a petition for substitution for cause under section 2-1001(a)(3) of the Code must automatically refer the petition to another judge for a hearing upon the filing of the petition, even when the petition, on its face, fails to comply with threshold procedural and substantive requirements. *Wilson*, 238 Ill. 2d at 522. The court held that a party's right to have a petition for substitution heard by another judge is not automatic, but the right is triggered only if the party seeking that relief is able to bring himself or herself within the provisions of the law. *Id.* at 553. "In order to trigger the right to a hearing before another judge on the question of whether substitution for cause is warranted in a civil case pursuant to section 2-1001(a)(3), the request must be made by petition, the petition must set forth the specific cause for substitution, and the petition must be verified by affidavit." *Id.* The court stated that in order to meet the statute's threshold requirements, a petition for substitution must allege grounds that, if true, would justify granting substitution for cause. *Id*. at 554. "Where bias or prejudice is invoked as the basis for seeking substitution, it must normally stem from an extrajudicial source, *i.e.*, from a source other than from what the judge learned from her participation in the case before her." *Id.* The supreme court explained that opinions formed by the judge during the course of the proceedings do not constitute a basis for a bias unless they " ' "display a deep-seated favoritism or antagonism that would make fair judgment impossible." ' " *Id.* (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002), quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 24 In *Wilson*, the party seeking the substitution alleged that the judge's determination that its witness was not credible in a previous hearing created a bias that would make fair judgment in the upcoming hearing impossible. *Id.* at 555. The supreme court rejected this as a ground for cause, stating that an assessment of the credibility of a witness based on the evidence presented in the course of the proceedings is a matter within the trial court's discretion and does not rise to the level of deep-seated favoritism or antagonism that would make fair judgment impossible. *Id*. For this reason, the supreme court stated that, even if it had taken the allegations as true, they would not establish "cause" for substitution within the meaning of section 2-1001(a)(3) of the Code. *Id.* Therefore, the trial court had no obligation under the statute to refer the matter to another judge for a hearing. *Id*.

¶ 25 Likewise, in this case, the petitioners' allegations, taken as true, do not establish cause for substitution as meant under section 2-1001(a)(3) of the Code. As evidence of bias toward the respondent, the petitioners cite to statements the trial judge made during the June 1, 2012, hearing, which we point out did not end in the respondent's favor, but rather in favor of the petitioners. The statements do not reveal opinions derived from an extrajudicial source, but rather are remarks made during the course of proceedings which do not show a high degree of favoritism or antagonism such that fair judgment was impossible. For instance, the court's comment that it was not "going to stick it to some nice 85-year-old lady because the bank

can't give" it certain documents, when read in context of the proceedings, revealed only that the court was unwilling to grant the petitioners' motion for a directed verdict because the bank did not supply the proper bank documents at the hearing. Ultimately, the court denied the respondent's petition but allowed her time to replead with the proper bank account documents.

¶ 26 Next, when the court stated that it agreed with counsel's argument regarding the POA statute, but mentioned a constructive trust issue, the court was merely rejecting the petitioners' contention that the POA statute resolved the entire claim made by the respondent. The court went on to explain that the POA issue did not resolve the question of a mutual mistake. We further reject the petitioners' claim that the court *sua sponte* advocated a constructive trust claim for the respondent. The record reflects that the respondent argued that the beneficiary information was only changed in 2010 to correct the mistake that occurred in the 2008 brokerage account transfer. The circuit court did not advocate for the respondent when it mentioned the constructive trust possibility, but simply was discussing the legal implications of the respondent's claim.

¶ 27 Finally, the other statements highlighted by the petitioners also reveal no specific bias or antagonism, but reflect only the court's frustration with the parties and the proceedings. The court stated "Jesus. Well, I'm real–for the purpose of the Appellate Court, I'm totally confused. There's ambiguity all over this courtroom. I can't link anything together." The court made this comment out of frustration because the parties did not produce the proper bank account documents at the hearing, and the court could not follow the IRA account's many account changes. The court also told counsel for the petitioner to "be quiet," again indicating it was frustrated with the parties. None of these statements, however, demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible. Under these facts, the trial court was not obligated to transfer the petition to be heard by another judge because the allegations, even taken as true, did not constitute "cause" under the meaning of section 2-1001(a)(3).

¶ 28 Next, the petitioners argue that the circuit court erred when it determined the 2008 beneficiary designation form was ambiguous and then considered parol evidence. The petitioners contend that, because the respondent exceeded her POA authority when she signed the 2010 form, the unambiguous 2008 form controlled. We disagree.

¶ 29 Generally, if the instrument at issue appears complete, certain, and unambiguous, then parol evidence of a prior or contemporaneous agreement is inadmissible to vary the terms of the instrument. *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 391 (1992). However, it is well settled that the parol evidence rule does not bar the admission of extrinsic evidence on the question of mutual mistake, even when the instrument to be reformed is clear and unambiguous on its face. *Id*. A mutual mistake is one which is common to both contracting parties and each labors under the same misconception. *Id*. In other words, the parties are in actual agreement but the agreement in its written form does not express the parties' true intent. *Id*. Thus, parol evidence may be used to show the real agreement between the parties when a mistake has been made and the evidence is for the purpose of making the contract conform to the original intent of the parties. *Id*.; see also *First Health Group Corp. v.*

*Ruddick*, 393 Ill. App. 3d 40, 53 (2009) (stating that parol evidence is admissible to prove mutual mistake); *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1045 (2001) (stating that, in reformation action, parol evidence is admissible to prove by clear and convincing evidence the actual agreement).

¶ 30    In this case, the respondent argued that she signed the 2010 beneficiary form in order to correct the mistake that the decedent and Morgan Stanley made during the 2008 transfer of the IRA account. To prove the mistake, the respondent presented evidence of the IRA account's beneficiary history, which showed the respondent had always been the named beneficiary. She also presented the testimony of Peterson, who confirmed that the decedent had always wanted the respondent to receive the IRA account and had instructed her and Ratay to transfer his accounts to Morgan Stanley without any changes. Peterson testified that she received mistaken beneficiary information from Smith Barney and gave that information to the decedent, who put the information on the beneficiary form. Because mutual mistake was at issue, the circuit court did not err in admitting parol evidence. Therefore, the petitioners' argument on this issue fails.

¶ 31    Finally, petitioners argue that the circuit court erred when it refused to allow Daniel A. Danhauer to testify that the decedent told him in December 2008 that he intended the trust to be the beneficiary of the IRA. The petitioners argue that, assuming that parol evidence was admissible, they should have been allowed to present the testimony of Daniel A. Danhauer to demonstrate a triable issue of fact exists. The respondent argues that Daniel A. Danhauer's testimony was inadmissible under the Dead-Man's Act, and without it, there is no dispute that the 2010 beneficiary form was an attempt to correct the mistake in the 2008 form. While we disagree with the petitioners' contention that the court erred in excluding Daniel A. Danhauer's testimony, we agree that a triable issue of fact exists which makes summary judgment in this case improper.

¶ 32    We first address the court's exclusion of Daniel A. Danhauer's testimony or affidavit, noting that the petitioners failed to file a response to the respondent's motion for summary judgment. However, the petitioners previously filed Daniel A. Danhauer's affidavit and the trial court was obligated to consider the entire record in ruling on the motion for summary judgment (see *March v. Miller-Jesser, Inc.*, 202 Ill. App. 3d 148, 160 (1990)). Regardless, as the trial court previously determined, Daniel A. Danhauer's statements were inadmissible under the Dead-Man's Act (735 ILCS 5/8-201 (West 2012) (an interested party may not testify to conversations with the decedent)), and the court could not consider it (*Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996) (stating that any evidence which would be inadmissible at trial cannot be considered by the court in support of or opposition to a motion for summary judgment)).

¶ 33    To render a witness incompetent to testify under the Dead-Man's Act, the potential witness must have an interest in the judgment that will result in a direct, immediate monetary gain or loss. *Michalski v. Chicago Title & Trust Co.*, 50 Ill. App. 3d 335, 339 (1977). Further, contrary to the petitioners' argument that Daniel A. Danhauer could testify as an executor of the estate, the Dead-Man's Act specifically states that an " 'interested person' " does not include a person who is "interested *solely* as executor" or other fiduciary capacity. (Emphasis

added.) 735 ILCS 5/8-201 (West 2012). Here, Daniel A. Danhauer had an interest in the judgment that extended beyond his role as executor of the estate as the judgment would have resulted in a direct monetary gain or loss for him. Accordingly, the court did not err in refusing to consider Daniel A. Danhauer's affidavit or refusing to allow him to testify.

¶ 34 We are left to consider whether summary judgment was appropriate in this case. Reformation of a contract based on mutual mistake should be allowed only when clear and convincing evidence compels the conclusion that the instrument does not properly reflect the true intent of the parties. *Parrish v. City of Carbondale*, 61 Ill. App. 3d 500, 505 (1978). Whether the evidence offered to support the claim of mutual mistake is sufficient to overcome the presumption that the written instrument expressed the true intent of the parties is primarily a question that the trier of fact must determine. *Id.* at 506. Here, the trial court determined that the evidence presented was sufficient to prove mutual mistake in a summary judgment proceeding.

¶ 35 Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits and exhibits submitted to the trial court reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Upper Level, Inc. v. Provident Venture Corp.*, 209 Ill. App. 3d 964, 967 (1991). "A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999). Summary judgment is a drastic remedy and should be allowed only when the right of the moving party is free and clear from doubt. *Id.* We review *de novo* a circuit court order granting summary judgment. *Id.* at 30.

¶ 36 In this case, the respondent presented the testimony of Ratay and Peterson to support her claim that the decedent and Morgan Stanley mistakenly believed that the IRA transferred in 2008 without any changes to the beneficiary. Ratay and Peterson both testified that the decedent instructed them to transfer his accounts without making any changes. However, Ratay admitted that it was possible that the decedent had changed his mind, and Peterson admitted that the decedent filled out the beneficiary paperwork. Without any evidence from the decedent himself that he mistakenly changed the IRA beneficiary during the 2008 account transfer, a genuine issue of material fact remained as to whether the mistake was mutual. Whether the mistake had been mutual required the court to assess the credibility of Ratay and Peterson and determine the weight to place on their testimony, which are duties of the trier of fact. *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396 (2008) (the trial court cannot make credibility determinations or weigh evidence in deciding a motion for summary judgment). When considering a summary judgment motion, the circuit court does not decide a question of fact but, rather, determines whether one exists. *Id.* Here, the circuit court decided a question of fact, namely, that the 2008 beneficiary form did not reflect the true intent of the decedent, which is not a question properly decided in a summary judgment proceeding. See *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 313 (1994) ("Summary judgment is particularly inappropriate where, as here, the parties seek to draw inferences on questions

of intent."). Accordingly, the circuit court erred in granting the respondent's motion for summary judgment.

¶ 37 Based on the foregoing reasons, we affirm the judgment of the circuit court of Cook County which denied the petitioners' request for substitution of judge for cause, admitted parol evidence, and refused to admit the testimony of the petitioners' witness; however, we reverse the judgment of the circuit court which granted summary judgment in favor of the respondent and remand the cause for further proceedings.

¶ 38 Affirmed in part; reversed in part.

¶ 39 Cause remanded.